THE PEOPLE *ex rel.* J. M. Smith *et al.*

*v.*

N. CLIFFORD RICKER *et al.*

*Filed at Springfield November 2, 1892.*

1. SCHOOL LAW—*redistricting a township.* Sections 15 and 16, of article 6, of the revised School law of 1889, govern in all proceedings by districts organized under special acts, to abandon their organization and become organized under the general law. They prescribe the exclusive mode by which such organization shall be effected, and the conditions upon which the township trustees may acquire jurisdiction to re-district their township.

2. SAME—*effect of a vote of school district to organize "under the Free School law."* Upon the petition of fifty voters of a school district it is made the duty of the board of education, or other district authorities, to submit the question of "organization under the Free School law," to the voters of the district, and their vote being in favor of such organization, the trustees are not only empowered, but it becomes their imperative duty, to redistrict their township, the only limitation upon their power in that behalf being, that the re-districting shall be made in such manner as shall suit the wishes and convenience of a majority of the citizens of the township.

3. In such case, no petition of the citizens of the township, or of the district to be affected, is required, the authority of the trustees to act

being based solely upon the result of the election held in the district existing under the special act, upon the question of organization under the general law. As no mode is prescribed by which the trustees may ascertain the wishes and convenience of a majority of the inhabitants of the township, it follows that these matters are left to their official judgment and discretion. Sections 47 and 48, of article 3, of the revised School law, have no application in such a case.

4. SAME—*sections 47 and 48, article 3, construed.* Sections 47 and 48 of the School law, which prohibit any change in school districts unless petitioned for by the citizens affected thereby, clearly relate to those ordinary changes in the school districts of a township already fully organized under the School law, which, from time to time, become necessary in order to meet the wishes or convenience of the inhabitants of the various districts, but they have nothing to do either with the original organization of the township into districts, or to the re-organization which becomes necessary when a portion of the township previously organized into a district under a special act abandons its special organization, and becomes for the first time, for school purposes, a part of the township.

5. QUO WARRANTO—*one good plea sufficient—matters disregarded.* As one good plea is sufficient to defeat the writ of *quo warranto*, if there is one good plea it is immaterial whether the court errs in overruling a demurrer to another plea or not; and where a plea presents a complete defense, other matters set up therein as a defense may be disregarded.

APPEAL from the Circuit Court of Champaign county; the Hon. FERDINAND BOOKWATER, Judge, presiding.

Mr. J. O. CUNNINGHAM, for the appellants:

In construing the sections of the School law in respect to changes in school districts, the court should consider the mischiefs they were intended to guard against. *Ball* v. *Chadwick,* 46 Ill. 28.

The law is so mandatory that this court has held that a petition is jurisdictional, without which any such change by the trustees is void. *Carrico* v. *People,* 123 Ill. 200; *School Trustees* v. *People,* 71 id. 559; *Trustees* v. *People,* 121 id. 552.

Until recent changes in the statute, investing the trustees with some discretion, the voice of the people, when addressed to the board by petition, has been held to be mandatory. *Trustees of Schools* v. *People,* 76 Ill. 621.

All the provisions of a statute are taken together in ascertaining the intention of the law-giver. *Davis* v. *Haydon,* 3 Scam. 35; *Insurance Co.* v. *Swigert,* 104 Ill. 653.

A statute should be so construed as that all its parts will not only be consistent with each other, but that every part shall have effect. *Railroad Co.* v. *Railroad Co.* 122 Ill. 481; *Biggs* v. *Clapp,* 74 id. 338; *Savings Institution* v. *Givens,* 82 id. 160.

Mr. William B. Webber, for the appellees.

Mr. Chief Justice Bailey delivered the opinion of the Court:

This was an information in the nature of a *quo warranto,* brought by the state's attorney of Champaign county, on the relation of J. M. Smith, T. S. Dougan and J. N. Smith, against N. Clifford Ricker and six others, charging that the defendants, without warrant, right or title, had usurped and were holding and exercising the office of school directors, or board of education, of school district number 3, in township 19, north, of range 9, east of the 3d principal meridian, in said county.

Prior to October 11, 1890, said township was, and for many years had been, subdivided into school districts, that portion of the township lying outside of the city of Urbana being organized into school districts under the General School Law, and the territory within the city having been constituted a special school district under and by virtue of the provisions of an act of the General Assembly to reduce the charter of said city and the several amendments thereto to one act and to amend the same, approved April 1, 1869. (Vol. 2, Private Laws of 1869, page 280.) Among the districts adjoining Urbana school district was district number 4, organized under the General Law.

In the early part of 1890, proceedings were instituted, under the provisions of sections 15 and 16, of article 6, of the Re-

vised School Law of 1889, to dissolve Urbana school district and to make the same a part of the school township and subject to the jurisdiction of the township trustees, and such proceedings resulted in the submission of the question of "Organization under the Free School Law" to the voters of the district, at an election held on the third Tuesday of April, 1890, and at that election, the majority of the votes cast were in favor of such organization. The township trustees thereupon, on the 11th day of October, 1890, that being at their next regular meeting, proceeded to re-district the township into school districts, and in so doing, they formed a district known as district number 3, embracing all the territory included within the boundaries of the city, together with most of that included within the former district number 4, the residue of district number 4 being attached to another adjoining district, thus dissolving district number 4. The relators insist that said proceedings are void, and that district number 4 still remains a legally organized district, and they claim to be the legal incumbents of the office of school directors of that district. The defendants claim to be the board of education of district number 3, by regular election to that office since the organization of that district.

The defect in the organization of district number 3 specifically alleged in the information, and chiefly insisted upon by counsel in their argument is, that the school trustees, in re-districting the township, were not moved thereto by a written petition of the citizens of the township, or of any of the districts which were to be affected or the boundaries of which were proposed to be changed, as required by sections 47 and 48, of article 3, of the Revised School Law, and it is claimed that, for want of such petition, their proceedings were without jurisdiction and void.

The defendants appeared and filed two pleas. In their first plea they alleged the organization of Urbana school district under said special act, the presentation to the board of edu-

cation of that district, on the 10th day of January, 1890, of a petition signed by over fifty voters of the district, praying for a submission to the voters of the district of the question of "Organization under the Free School Law," the proper submission of that question to said voters at an election held on the third Tuesday of April, 1890, the majority of votes cast being in favor of such organization. It further alleged that the school trustees, being informed of the result of the election, at their next regular meeting begun and held October 4, 1890, and adjourned from that day to October 11, 1890, redistricted the township, as it was their duty to do, in the manner to suit the wishes and convenience of a majority of the inhabitants of the township, as required by section 16, of article 6, of the Revised School Law; that at said meeting and at the adjourned meeting, before action was taken by the trustees, the relators appeared and presented their views in writing upon the question of the annexation of the territory of their district to other districts; that on the 11th day of October, 1890, the trustees made a record of re-organizing and re-districting the township, and that no appeal was taken by any person from their order in that behalf to the superintendent of schools of the county, and that their proceedings remain in full force and effect; and said plea set out a copy of said proceedings and order, and also a copy of the plat of the township as re-districted, as made and filed by the trustees. Said plea also alleged the subsequent election of one of the defendants as president, and the other six defendants as members, of the board of education of school district number 3.

The second plea alleged the same facts, in substance, as the first, and also that, after the order of the trustees re-districting the township was made, the relators caused said proceedings and order to be taken to the Circuit Court of Champaign county by *certiorari,* and that, by the consideration and judgment of that court, said order was reversed, annulled and set aside, but that on appeal to this court, the judgment of the.

Circuit Court was reversed, whereby the order of the trustees was judicially determined to be valid.

To each of the pleas the relators interposed a general de-murrer, and the demurrer being overruled, and the relators having elected to abide by their demurrer, judgment was ren-dered that the defendants were not guilty in manner and form as charged in the information, and dismissing the writ at the costs of the relators. From that judgment the relators have appealed to this court.

The principal question raised by the appeal is, whether the proceedings by which the township was re-districted were con-trolled wholly by sections 15 and 16, of article 6, of the Re-vised School Law, or whether the provisions of sections 47 and 48, of article 3 of the law also applied. If the former, the proceedings seem to have been in all respects regular and in conformity to the statute. But if the latter sections also apply, it should perhaps be held that a petition of the requi-site proportion of the citizens of the school districts to be affected was jurisdictional, and that proceedings without such petition were void.

It will be seen on examination that article 6 of the School Law relates to school districts in incorporated cities, towns and villages, and provides for their organization and govern-ment in a mode in certain respects peculiar to themselves. It declares that all such districts, except those existing under special acts shall remain parts of the school townships in which they are respectively situated, and subject to the gen-eral provisions of the law applicable to such townships, but provides for their government by boards of education instead of school directors. Sections 15 and 16 of said article relate to districts existing under special acts, and provide a mode by which those districts may abandon their special organization and become re-organized under the General Law. Section 15 is as follows:

"Any city, incorporated town, township or district in which free schools are now managed under any special act, may, by a vote of its electors, cease to control such schools under such special act, and become a part of the school township in which it is situated, and subject to the control of the trustees thereof, under and according to the provisions of this act. Upon petition of fifty voters of such city, town, township or district presented to the board having the control and management of schools in such city, town, township or district, it shall be the duty of such board, at the next ensuing election to be held in such city, town, township or district, to cause to be submitted to the voters thereof, giving not less than fifteen days' notice thereof, by posting not less than five notices in the most public places in such city, town, township or district, the question of 'Organization under the Free School Law.'"

The form of notice is then prescribed, and section 16 is as follows:

"If it shall appear, on the canvass of the returns of such election, that a majority of the votes cast at such election are 'For organization under the Free School Law,' then at the next ensuing regular meeting of the board of trustees of the township or townships in which such city, incorporated town, township or district is situated, said trustees shall proceed to re-district the township or townships as aforesaid, in such manner as shall suit the wishes and convenience of a majority of the inhabitants in their respective townships, and to make a division of funds and other property, in the manner provided by section 63, of article 3, of this act, and on any Saturday thereafter, there shall be elected in each of the new districts so formed a director, directors or board of education, as the case may be, in the manner provided for in section 6, of article 5, of this act, and thereafter such districts shall proceed as other districts under this act."

We think it too plain for argument, that these sections govern in all proceedings by districts organized under special

acts to abandon their organization and become organized
under the General Law. They prescribe the exclusive mode by
which such re-organization shall be effected, and the conditions
upon which the township trustees may acquire jurisdiction to
re-district their townships. Upon petition of fifty voters of
the district, it becomes the duty of the board of education or
other district authorities, as to which they have no discretion,
to submit the question of "Organization under the Free School
Law" to the voters of the district, and their vote being in fa-
vor of such organization under the General Law, the trustees
are not only empowered, but it becomes their imperative duty,
to re-district their township, the only limitation upon their
power in that behalf being, that the re-districting shall be
made in such manner as shall suit the wishes and conve-
nience of a majority of the inhabitants of the township. No
petition of the citizens of the township, or of the districts to
be affected, is required, the authority of the trustees to act
being based solely upon the result of the election held in the
district existing under the special act upon the question of
organization under the General Law. No mode is prescribed
by which the trustees may ascertain the wishes or convenience
of a majority of the inhabitants of the township, and it nec-
essarily follows that those matters are left to their official
judgment and discretion.

We are of the opinion that the provisions of sections 47
and 48, of article 3, have no application. Not only is such
application negatived by the express terms of the sections
under which the proceedings were had, but sections 47 and
48 clearly relate to a different subject matter. Section 46, of
article 3, provides that, in case of newly organized townships,
the trustees of schools shall lay the township off into one or
more school districts, to suit the wishes or convenience of a
majority of the inhabitants of the township. Section 47 then
provides that, where such division of a township into districts
has been made, the trustees may, in their discretion, at their

42—142 ILL.

regular April meeting, when petitioned as provided in section 48, change such districts as lie wholly within their townships, so as, 1. to divide or consolidate districts; 2. to organize a new district out of territory belonging to two or more districts; and, 3. to detach territory from one district and add the same to another district adjacent thereto. But section 48 provides that no such change shall be made as provided in section 47, unless petitioned for, in certain cases by one-half, and in other cases by two-thirds of the legal voters of the district, districts or territory to be affected by the change.

These sections clearly relate to those ordinary changes in the school districts of a township already fully organized under the School Law which from time to time become necessary in order to meet the wishes or convenience of the inhabitants of the various districts, but they have nothing to do, either with the original organization of the township into districts, or to the re-organization which becomes necessary when a portion of the township previously organized into a district under a special act, abandons its special organization and becomes, for the first time, for school purposes, a part of the township.

We are not unmindful of the general rule that the different parts of the same statute, as well as different statutes which are in *pari materia,* should be construed together, but such construction is for the purpose of preventing conflict, and of applying each provision to its own appropriate subject matter. It is entirely in consonance with this canon of interpretation that we hold that sections 15 and 16, of article 6, apply to a re-districting of the entire township under the circumstances disclosed here, and that sections 47 and 48, of article 3, apply only to changes by the school trustees in school districts under wholly different circumstances. It follows that no petition, as provided by section 48, was necessary in this case, to authorize the trustees of schools to re-district their township, in the manner they did, and so far as that objec-

tion is concerned, the demurrer to the defendants' pleas was properly overruled by the Circuit Court.

It is further insisted that the pleas fail to show that school district number 3 has a population of 1000, so as to be entitled to elect a board of education instead of directors, as provided in section 2, of article 6, of the School Law, and that for that reason the defendants have failed to show title to their offices, as president and members of the board of education of the district. Without pausing to determine whether such averment was necessary, it is sufficient to say that the second plea does show, by proper averment, that, at the time the order of re-districting was made, that portion of district number 3 previously embraced in the Urbana school district contained 2506 school children, which we think sufficiently shows that the entire district contained a population of not less than 1000. Even if it should be held that the first plea was defective in this respect, the second plea, which repeats, in substance, all the averments of the first plea, and adds said averment as to population, presents, so far at least as the matter here suggested is concerned, a good defense, and one good plea being sufficient to defeat the writ, it is quite immaterial whether the court erred in overruling the demurrer to the other plea or not.

But the second plea is attacked on the further ground that it attempts to set up a former judgment of this court by way of estoppel, and that it fails to show a final adjudication of the precise questions presented by the present appeal. We do not regard it important to determine the sufficiency of said plea as a plea of *res judicata,* as the facts set forth in said plea, even if its averments in relation to the appeal in the *certiorari* proceeding are disregarded, are quite sufficient to establish the defendant's title to the office which they are charged in the information with having usurped, and they are therefore sufficient to present a complete defense to the writ.

The judgment of the Circuit Court was correct, and it will be affirmed. *Judgment affirmed.*