THE PEOPLE *ex rel.* Burdick, County Superintendent,

*v.*

THE BOARD OF EDUCATION OF THE CITY OF CENTRALIA.

*Filed at Mt. Vernon November 11, 1896—Rehearing denied May 5, 1897.*

1. STATUTES—*when statute is repealed by implication.* Where two statutes are clearly repugnant the last enacted operates as a repeal of the former; and a statute which revises the whole subject of a former one, and is intended as a substitute for it, operates as a repeal of the former, although no repealing words are used.

2. SCHOOLS—*board of education under general law cannot appoint treasurer.* A board of education elected under the act to allow munici-

palities managing free schools under special acts to elect boards of education having the powers provided for such boards under the general law, (Laws of 1891, p. 194,) has no power to appoint a treasurer of the school fund, and the custody of such funds belongs to the township treasurer.

APPEAL from the Circuit Court of Marion county; the Hon. BENJAMIN R. BURROUGHS, Judge, presiding.

This is a petition for *quo warranto* by Charles E. Jennings, State's attorney for Marion county, upon the relation of S. G. Burdick, superintendent of schools in said county, alleging that, on April 1, 1869, a board of education in the city of Centralia in said county was organized under a special act of the legislature, and thereafter until April 15, 1893, controlled and managed the free schools in said city under the authority granted by said act; that, on February 15, 1893, said city, having a population of not less than 1000 and not over 20,000, presented a petition of fifty voters thereof to said board, praying it at the next ensuing election to be held therein on April 15, 1893, to submit to the voters of said city the question of electing a board of education, having the powers conferred upon such board of education in districts organized under the general free school laws; that, on April 15, 1893, said board submitted said question to the legal voters to be voted on at said election, and the same was carried and received a majority of the votes cast; that thereupon a board of education for said city was then and there elected, having the control and management of the schools of said city conferred upon such board as in districts organized under the free school laws, and ceased their control and management thereof under said special act, and has since managed and controlled them under the general free school laws; that, by virtue of the statute in such case made and provided, the township treasurer of schools, appointed by the trustees of schools in townships under the said free school laws, is the custodian and keeper of all moneys raised and collected by

taxation or otherwise for all school purposes in such township; and yet, that the said board of education of said city of Centralia in the township of Centralia in said county uses and exercises the liberty, privilege and franchise of appointing a treasurer of such schools for said board, and claims the right to do so, and has appointed one Parkinson as such treasurer, a different person from the school treasurer of said township, and requires the treasurer so appointed by it to keep, hold and collect all money for school purposes raised by taxation or otherwise, so used by said board in maintaining and conducting the free schools of the said city. The prayer of the petition is, that the present board show by what authority it claims the exercise of the privilege of appointment as aforesaid.

The board of education, defendant below, demurred to the petition, and the demurrer was sustained by the circuit court. To this ruling the People excepted and elected to stand by the petition. Thereupon the court quashed the writ of *quo warranto*, and dismissed the petition without costs. From this judgment the present appeal is prosecuted.

HENRY C. GOODNOW, for appellant:

Where there is a clear repugnance between two laws, and the provisions of both cannot be given effect, the later law must prevail. *Devine* v. *Cook County*, 84 Ill. 590.

A statute which covers all the grounds of prior ones on the same subject and revises the whole law on the given subject necessarily works a repeal of all prior conflicting laws, whether such conflict be found in the provisions of general laws or in those of special charters. *Andrews* v. *People*, 75 Ill. 605.

FRANK F. NOLEMAN, and W. F. BUNDY, for appellee:

The powers acquired by the vote of 1891 are specifically set out and enumerated, and do not conflict with the

power under the special charter to appoint a treasurer. 3 Starr & Curtis, art. 6, sec. 10, p. 1182.

To establish a school, provide the necessary funds for its support, and designate such persons for the levying, collecting and having the custody of such funds, is one thing; its management or conduct when established and supported, another and quite different thing.  *Speight* v. *People*, 87 Ill. 600; *Fuller* v. *Heath*, 89 id. 313.

Repeals by implication are not favored by the law, and a later statute will never repeal an earlier one unless the two are so inconsistent or repugnant that they cannot be reconciled.  If they are seemingly repugnant they will be so construed as to avoid such repeal by implication. *Hunt* v. *Railway Co.* 121 Ill. 644, and cases cited.

Where there is no express repeal none is deemed to be intended, unless there is such inconsistency as precludes the assumption that no repeal was intended.  Sutherland on Stat. Const. sec. 287.

All laws, whether in special charter or elsewhere, designed to affect free schools, may be regarded part of the School law.  *Speight* v. *People*, 87 Ill. 600; *Fuller* v. *Heath*, 89 id. 313; *School Directors* v. *School Directors*, 135 id. 474.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the court:

Prior to April 15, 1893, the free schools in the city of Centralia were managed and controlled by a board of education, consisting of five members, elected under and governed by the provisions of a special act of the legislature, entitled "An act to establish and regulate a system of public schools in the city of Centralia," approved April 1, 1869.  (3 Private Laws of Ill. p. 409).  That act provided, that the board of education should appoint a treasurer to hold office for one year and until his successor should be elected and qualified, subject to removal by a vote of the majority of the board.  The act, under which the election of April 15, 1893, took place, is an act

approved June 2, 1891, entitled "An act to give cities, incorporated towns, townships and districts, in which free schools are now managed under special acts, authority to elect boards of education, having the same powers as boards of education now elected under the general free school laws of this State." (Laws of Ill. of 1891, p. 194). Section 1 of the act of 1891 provides that "any city, incorporated town, township or district, having a population of not less than one thousand and not over twenty thousand inhabitants, in which free schools are now managed under any special act, may, by vote of its electors, determine to elect, instead of the directors or other governing or managing board now provided for by such special act, a board of education, which shall be elected at the time and in the manner and have the powers now conferred by law upon boards of education of districts not governed by any special act." Section 2 of said act provides, that, "upon petition of fifty voters of such city, town, township or district, presented to the board having the control and management of schools in said city, * * * it shall be the duty of such board, at the next ensuing election to be held in such city, town, township or district, to cause to be submitted to the voters thereof, giving not less than fifteen days' notice thereof, * * * the question of 'electing a board of education having the powers conferred upon such boards in districts organized under the free school laws.' * * * If it shall appear upon a canvass of the returns of such election that a majority of the votes cast at such election are 'For electing a board of education having the powers conferred upon such boards in districts organized under the free school law,' then, at the time of the next regular election for boards of education under the free school law, there shall be elected a board of education for such district," etc.

The simple question, and the only question, in this case is, whether the power which the old board of education had, under the special act of 1869, to appoint a

treasurer was abrogated by the proceedings taken and had under the act of 1891.   It is contended by appellee, that the board of education elected under the act of 1891 has the same power to appoint a treasurer as the old board had under the act of 1869, and that the treasurer so appointed is entitled to have the custody of all moneys collected for school purposes in the city of Centralia to be used by said board of education.   On the other hand, it is contended by the appellant, that the township treasurer is entitled to have the custody of such moneys.  The township treasurer, under the provisions of the School law, is appointed by the board of trustees for schools to hold his office for two years, subject to removal by the board for good and sufficient cause.   (3 Starr & Cur. Stat. pp. 1153, 1165).

Unquestionably, the present board of education, elected and organized under the act of 1891, has "the powers conferred upon such boards in districts organized under the free school laws."   The question, therefore, whether it has the power to appoint a treasurer of the school funds depends upon the answer to the further question, whether the power to appoint such treasurer is one of the powers conferred upon boards of education in districts organized under the free school laws.

Upon referring to the "Act to establish and maintain a system of free schools," approved May 21, 1889, and the amendments thereto, as found in chapter 122 of the Revised Statutes, it will be noticed, that no express power is conferred upon boards of education to appoint treasurers of school funds.   (3 Starr & Curtis' Stat. pp. 1182, 1183).   From this fact it is argued by appellee, that the election and other proceedings taken under the act of 1891 merely added to and enlarged the former powers granted by the special act of 1869 and did not destroy them; that there is nothing in the powers conferred by the school law of 1889 inconsistent with the power to appoint a treasurer; and that, therefore, the power so to

appoint still remained after the election in April, 1893, together with the added powers named in the act of 1889. We are unable to assent to this view.

We are of the opinion, that a board of education, elected and organized under and by virtue of the vote and other proceedings taken in pursuance of the act of 1891, has no power to appoint a treasurer of school funds, and that the custody of such funds belongs to the township treasurer. Without discussing in detail all the provisions of the school laws, we will merely indicate in general terms the reasons for the conclusion reached.

The act of 1891, together with such portions of the existing school laws as it adopts and makes a part of itself, is inconsistent with the act of 1869, and was evidently intended to be a substitute for it, so far as relates to the powers of the board of education. The language of the act of 1891 is clear to the effect, that the new board to be elected under that act, with the new powers conferred upon it, was to be in the place and stead of "the directors or other governing or managing board now provided for by such special act." The old board provided for by the special act was to go out of existence, and when it went out of existence, the powers granted to it by its charter went with it. The new board, which was to take its place, was a board with specifically defined powers, with no express reservation of any of the powers of the old board, but rather with an implied abrogation of the powers of the old board. According to the language of section 1, "any city * * * in which free schools are now managed under any special act," is to elect a board of education with "powers now conferred by law upon boards of education of districts not governed by any special act." Management under the special act is to give way; and powers, other than those conferred by any special act, are to be exercised. As the new board was to have such powers as are conferred by the general law, and as the general law did not confer the

power to appoint a treasurer, the new board did not ac-
quire the power to make such appointment.

That the board, created by the act of 1891, did not re-
tain the power to appoint a treasurer granted by the act
of 1869 is apparent from the fact, that, under the school
law of 1889, substantially the same duties are imposed
upon the township treasurer which, under the act of 1869,
were imposed upon the treasurer appointed by the old
board created by the latter act.   It could not have been
intended, that there should be two treasurers appointed
by different bodies, and for different terms, both perform-
ing the same duties and handling the same funds.   The
later act of 1891, which imposes these duties upon the
township treasurer, must be held to govern, as against
the earlier act of 1869 which imposed these duties upon
the treasurer appointed by the board of education.

A cursory comparison of the two acts shows that, un-
der the later act, the township treasurer was to take the
place of the treasurer appointed by the board under the
earlier act.   The act of 1869 requires the treasurer ap-
pointed by the board to give bond conditioned, among
other things, "faithfully to keep and from time to time to
pay over, upon the order of the board, all moneys that
he shall receive as such treasurer," also to keep a true
and accurate account of all moneys received and paid out
by him, and to "pay out no money except upon the order
of the board."   The act of 1869 also provides, that the
school commissioner shall apportion so much of the school
fund coming to his hands, as the city of Centralia is en-
titled to, to that city, and "shall pay over to the said
treasurer the amount due said city;" and further provides,
that "all taxes levied in accordance with the provisions
of this act shall be paid over, by the officer collecting
the same, to the treasurer of the board of education."
The act of 1869 confers upon the board of education,
among other powers, the power to "pay for the lands and
houses and furniture, as well as the other expenses of

said school system, from the public moneys in the hands of the treasurer of said board."

On the other hand, section 14 of article 6 of the school law of 1889 provides, that "all money raised by taxation for school purposes, or received from the State common school fund, or from any other source for school purposes, shall be held by the township treasurer as a special fund for school purposes, subject to the order of the board of education, upon warrants signed by the president and secretary thereof." (3 Starr & Cur. Stat. p. 1184). Among the powers, conferred upon the board of education by section 10 of said article 6, is the power "to levy a tax annually upon the taxable property of the district in the manner provided in article 8 of this act for the purpose of supporting and maintaining free schools," etc. (3 Starr & Cur. p. 1182.)   Said article 8 provides, that the directors of each school district shall annually certify the amount to be raised by special tax for school purposes during the ensuing year to the township treasurer; that the township treasurer shall return such certificate to the county clerk; that the county clerk shall send by mail to each township treasurer a certificate of the amount of such tax due to each district; and that the "collector shall pay to said township treasurer the full amount of said tax so certified by the county clerk." (3 Starr & Cur. Stat. pp. 1194-1196).

Section 10 of article 6 of the school law of 1889 confers upon boards of education the powers specifically mentioned in that section, and, in addition thereto, all the powers of school directors.   A reference to the provisions of the act in regard to school directors will show, that such directors are required to draw their orders, for the payment of money out of school funds, upon the township treasurer.   (3 Starr & Curtis' Stat. pp. 1179, 1180). One instance of the repugnancy between the provisions of the act of 1869 and those of the act of 1889 in regard to the payment of the expenses of the school system is seen

in the requirements of the two acts in regard to the payment of teachers. Section 7 of the act of 1869 authorizes the board of education to pay teachers a suitable compensation, and to make such payment "from the public moneys in the hands of the treasurer of said board," who was appointed by the board. (3 Private Laws of 1869, p. 412). The act of 1889 authorizes school directors, all of whose powers are also given to boards of education, to pay out money to teachers, but to make such payments by orders drawn by the directors upon the township treasurer. (3 Starr & Curtis' Stat. pp. 1177, 1179).

Manifestly, the reason, why the power to appoint treasurers was not conferred upon boards of education by the existing law of 1889 referred to in the act of 1891, is, that all the powers and duties, conferred upon and required of treasurers appointed by the board of education under any special act, were taken from such treasurers and given to and required of township treasurers, thereby rendering the appointment of treasurers by the boards of education unnecessary.

In view of the comparison thus made between the acts of 1869 and 1891, including the provisions of the school law of 1889 referred to in the act of 1891, the principles of construction here applicable, as giving force and effect to the later acts, are very plain and simple. If two statutes are clearly repugnant to each other, the one last enacted operates as a repeal of the former; and a subsequent statute, which revises the whole subject of a former one, and is intended as a substitute for it, operates as a repeal of the former, although there are no express words of repeal. (*People* v. *Nelson*, 156 Ill. 364; *Devine* v. *Cook County*, 84 id. 590; *Andrews* v. *People*, 75 id. 605).

The judgment of the circuit court is reversed, and the cause is remanded to that court for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*