(No. 43449.—)

THE PEOPLE *ex rel.* Edward F. Killeen, Appellee, *vs.*
KANKAKEE SCHOOL DISTRICT NO. 11 *et al.,* Appellants.

*Opinion filed May 21, 1971.*

EDWIN W. SALE, of Kankakee, for appellants.

J. F. MICHELA and DAVID M. JAFFE, both of Kankakee, for appellee.

Mr. JUSTICE DAVIS delivered the opinion of the court:

This appeal involves a question arising under the fourteenth amendment of the United States constitution, section 2 of article II, and section 1 of article VIII of the Illinois constitution, relative to the validity of the provisions of section 32—1 of the School Code (Ill. Rev. Stat. 1969, ch. 122, par. 32—1) relating to the dissolution of a special charter school district and its reorganization under the general provisions of the Code. The defendants-appellants, Kankakee School District No. 111 of Kankakee County, referred to as the District, and the duly elected and acting members of its Board of Education, referred to as the Board, contend that section 32—1 of the Code is unconstitutional and void, in that it is vague, incomplete and indefinite. 43 Ill.2d R. 302(a)(2).

Edward F. Killeen, the plaintiff-appellee, filed a petition for a writ of *mandamus* in the circuit court of Kankakee County to compel the Board to submit to the voters at the next ensuing election to be held on August 3, 1970, the question of "organizing under the general school law." The circuit court granted the writ, which commanded the Board to cause to be submitted to the voters of the District, at the election to be held August 3, 1970, the question of organizing under the general school law, and to give proper notice of said election. The defendants appealed directly to this court in that the litigation involved a question arising under the constitution of this State and the United States. See: *Scofield* v. *Board of Education,* 411 Ill. 11.

On appeal, the defendants contend that since there are no provisions in section 32—1 for the succession of the new Board of Education to the rights, powers, duties and responsibilities of the former Board under the special charter district, the section is so incomplete, vague and uncertain in the areas of taxation, employment of personnel, leases and contracts as to render it inoperative, void, and in violation of section 2 of article II of the Illinois constitution

and the fourteenth amendment of the constitution of the United States; and that by virtue of such deficiencies the children of the district will be denied a good common school education in violation of section 1 of article VIII of the Illinois constitution.

The plaintiffs urge that when the provisions of section 32—1 are read in conjunction with other provisions of the School Code, that the legislative intent and plan with respect to dissolution of special charter districts is clearly discernible, and that other sections of the Code furnish procedures for the transition from the special charter district to one organized under the general school law.

We recognize that certain provisions of the School Code are incomplete when considered apart from the remaining provisions of the Code. Section 32—1 of the Code reads, in part: "(a) Any special charter district may, by vote of its electors, cease to control its school under the Act under which it was organized, and become part of the school township or townships in which it is situated. Upon petition of 50 voters of the district, presented to the board having the control and management of the schools, the board shall cause to be submitted to the voters at the next ensuing election to be held in the district, the question of 'organizing under the general school law.'" The section makes no provision for the transfer of the powers and responsibilities of the old Board to the new, should the question of reorganization carry in the election.

In *Ketcham* v. *Board of Education*, 324 Ill. 314, wherein eight common school districts were organized into a community consolidated school district and five of the districts subsequently detached therefrom, questions arose similar in nature to those presented in this appeal, among which was the question relative to the distribution of funds in the hands of the school treasurers of the three townships wherein the territory of the district was situated. There the court conceded that the "question presented is not free from doubt"

because the particular section of the school law in question did not make provision for the distribution of the funds. At page 317, the court stated: "For the purpose of learning and giving effect to the legislative intention, all statutes relating to the same subject must be compared and so construed with reference to each other that effect may be given to all the provisions of each, if it can be done by any fair and reasonable construction. It must be presumed that the several statutes relating to one subject are governed by one spirit and policy and that the legislature intended the several statutes to be consistent and harmonious. Where two acts *in pari materia* are construed together and one of them contains provisions omitted from the other, the omitted provisions will be applied in a proceeding under the act not containing such provisions, where not inconsistent with the purposes of the act." Also see: *People ex rel. Bell* v. *New York Central R.R. Co.,* 10 Ill.2d 612, 620, 621; *People ex rel. Nordstrom* v. *Chicago and North Western Ry. Co.,* 11 Ill.2d 99, 106, 107.

In the case at bar, we are not confined to the language of section 32—1 of the School Code in determining the completeness of the legislative provisions and the intent of the legislature. We may resort to other sections of the Code which specify procedures to be followed upon the dissolution of one school district and the reorganization of another.

In *Scofield* v. *Board of Education,* 411 Ill. 11, it was contended that sections 5A—2 and 5A—3 of article 5A of the School Code (Ill. Rev. Stat. 1951, ch. 122, pars. 5A—2 and 5A—3) were so incomplete, vague and uncertain as to render article 5A inoperative and unconstitutional for failure to specify the qualifications of voters. We held that it was proper to consider the provisions of the Election Code, and that if the General Assembly had intended to change voter qualifications it would have said so in article 5A. At page 20, we further stated: "This court also held in the case of *Ketcham* v. *Board of Education,* 324 Ill. 314, that where two acts *in pari materia* are construed together and where

one of them contains provisions omitted from the other, the omitted provisions will be applied in a proceeding under the act not containing such provisions where not inconsistent with the purposes of the act. It must be presumed that the several statutes relating to one subject are governed by one spirit and one policy and that the legislature intended the several statutes to be consistent and harmonious."

Recourse may be had to other sections of the School Code to provide for the transfer of territory, funds, rights, privileges, obligations and duties from one school district and board to another, should the voters of the special charter district vote to organize under the general school law.

It is clear that if the electors of the special charter district vote to organize under the general school law pursuant to section 32—1 of the School Code, the special charter school district is dissolved. (*People ex rel. Burdick* v. *Board of Education,* 166 Ill. 388, 394.) Upon such dissolution, the former special charter district would become "part of the school township or townships" of Kankakee County, a class I county, under section 32—1.

Section 5—31 of the School Code provides in part: "The trustees of schools shall also cause any territory taken from a school district acting under a special charter to be formed and established into a school district to be governed under such general school laws of the State within thirty days from the time such territory is taken from the district acting under a special charter; and the trustees shall call an election for the purpose of electing directors for such district within ten days after the organization thereof." Pursuant to this section of the Code, the County Board of School Trustees would cause the new school district, which would be governed under the general school laws, to be formed and established, and would call an election for the directors of such district.

As the successor school district to the special charter district, the new common school district would become

liable for all of the financial obligations of the dissolved district. Initially, the County Board of School Trustees and, ultimately, the directors of the new school district would carry out its contractual commitments with other governmental entities and with its school personnel, would pay its lawful debts for leases, insurance, supplies, for the purchase of real property, and the new directors would levy taxes for the maintenance and operation of the grade and high school.

It is well established that these powers are possessed by the successor to the special charter district. In *Chalstran* v. *Board of Education,* 244 Ill. 470, at pages 477 and 478, we stated: "Municipalities may have their boundaries modified, their names changed or one may be merged in another, or they may be divided and portions of their territories annexed, but it will be presumed that the legislature intended that the liabilities as well as the rights of property of the corporation shall accompany it into the jurisdiction of the territory which annexes or incorporates it." In addition to this statement of authorization to perform the functions of, and meet the obligations of the special charter district if dissolved, the School Code itself makes adequate provision for the transition.

In event of dissolution of the District, sections 5—1 and 7—28 of the School Code (Ill. Rev. Stat. 1969, ch. 122, pars. 5—1 and 7—28) provide that title to its real property would vest in the County Board of School Trustees. They would have the power to purchase, sell and convey the real estate of the District, and it would be their duty to fulfill the option agreement of the District. The contractual continued service status of the teachers and administrative personnel of District would not be lost or prejudiced. Section 24—12 of the School Code (Ill. Rev. Stat. 1969, ch. 122, par. 24—12) clearly protects such status of the personnel in the new district.

The District and Board urge that under section 10—20.8 of the School Code, a common school district created after

1959 cannot maintain grades 9 to 12 unless such grades were maintained during the school year which ended June 30, 1959. However, sections 10—21.2 and 17—2 of the School Code (Ill. Rev. Stat. 1969, ch. 122, pars. 10—21.2 and 17—2) negate that the legislature intended to suspend a high school which had been conducted by a special charter district, when the voters of that district elect to reorganize under the general school law. Section 10—20.8 has application to newly formed districts not preceded by any other legal entity which operated a high school.

As a peripheral issue in this appeal, the defendants have challenged the right of the circuit court to issue a writ of *mandamus*. The submission of the question of organizing under the general school law is phrased in mandatory language. It permits no discretion on the part of the Board once a proper petition is filed before the Board bearing the required number of valid signatures. (*People ex rel. Smith* v. *Ricker*, 142 Ill. 650, 657.) *Mandamus* is an appropriate remedy, under proper circumstances, to compel the governing body of a school district to call an election. "Where an officer or board is under a clear ministerial duty to give notice of, and to order, an election, or to perform any other specific act in connection with the calling of an election, mandamus is an appropriate remedy to compel the performance of that duty in the manner prescribed by law." 26 I.L.P., *Mandamus,* sec. 75.

The defendants contend that the issuance of the writ should have been refused because the transition would cause great confusion in the operation of the school and its functions. In *People ex rel. Stoffel* v. *Town of Cicero,* 404 Ill. 432, where a similar contention was made, this court, at page 439, stated: "In the present case the writ was granted by the trial court, and hence the question of a trial court's discretion to refuse the writ in the situation described is not before this court. In any event, appellants have not shown that confusion or disorder will result from the granting of

the writ. The order merely directs them to submit the question to a vote of the electors. It is not contended that the holding of such an election would create confusion or disorder. Nor would confusion necessarily arise even if the proposition is adopted by the voters, for ample power exists in the appropriate agencies of government to provide for township government in the area in question."

The Board was under a clear ministerial duty to give notice of and call an election to submit the question of organizing under the general school law to the voters of the District. The writ was properly awarded. Accordingly, the judgment is affirmed and the cause is remanded, with directions to the trial court to proceed in accordance with the views expressed herein.

*Affirmed and remanded,*
*with directions.*