JUSTICE REINHARD
 

 delivered the opinion of the court:
 

 Respondent, Dolores Pick (Dolores), appeals from a trial court order, which dismissed her two petitions seeking rules to show cause why petitioner, Harold Pick (Harold), should not be held in contempt of court. She also appeals from the trial court’s entry of a judgment for $100 against her, in Harold’s favor, for wrongful filing of these petitions.
 

 The petitions alleged that Harold had violated an ex parte temporary restraining order (TRO). This TRO prohibited Harold from withdrawing funds from a certain bank and from a certain cash management fund. In its order of dismissal, the trial court found that Harold’s alleged violations of the TRO occurred more than 10 days after the issuance of the TRO. The trial court, therefore, found that the TRO had expired as a matter of law before the time of the alleged violations.
 

 No final judgment has been entered in the dissolution of marriage proceeding. This appeal is only from the dismissal of the petitions for rules to show cause in the contempt action, which was collateral to the dissolution proceeding.
 

 Dolores raises the following issues on appeal: (1) whether the 10-day time limit for a TRO issued without notice required by section 11 — 101 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 11 — 101) applies to a TRO issued without notice under section 501 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1981, ch. 40, par. 501), and (2) if the 10-day limit does not apply, whether the judgment for $100 entered against her should be reversed.
 

 On July 8, 1982, Harold filed a petition seeking a dissolution of the parties’ marriage. On July 14, 1982, Dolores filed a petition for a TRO seeking, inter alia, to restrain Harold from withdrawing any funds from an E.F. Hutton cash management fund and from cashing a Capital Bank of Chicago certificate of deposit. On that same day, the trial court issued a TRO restraining Harold from withdrawing or using these funds. The parties do not dispute that this TRO was issued without notice being given to Harold. On August 5, 1982, the trial court entered an order in which it stated, inter alia, that “the previous restraining order is still in full force and effect.”
 

 On October 26, 1982, Dolores filed a petition for a rule to show cause against Harold alleging that on July 26, 1982, he obtained release of funds from the E.F. Hutton account in violation of the TRO. On November 1, 1982, Dolores filed a second petition for a rule to show cause against Harold alleging that he withdrew money on July 13, 1982, and on July 27, 1982, from the Madison Bank & Trust Company. No explanation is provided for the inconsistency between the TRO’s language restraining withdrawal of funds from the Capital Bank and Dolores’ petition, based on the TRO, concerning funds withdrawn from the Madison Bank. The parties do not discuss this inconsistency in their briefs.
 

 On November 17, 1982, Dolores was allowed to amend the second petition on its face by changing the dates of the alleged withdrawals to July 15, 1982, and July 21, 1982. Dolores withdrew these amendments on November 18, 1982, and returned to the original dates of July 13, 1982, and July 27, 1982. No argument is presented by the parties on appeal concerning the fact that the first withdrawal is alleged to have occurred before the date that the TRO was issued.
 

 On November 8, 1982, Harold filed a response to Dolores’ petition for a rule to show cause. In argument on the petition, Harold maintained that the alleged violations occurred more than 10 days after the issuance of the TRO and, therefore, that it had expired prior to the alleged violations. In its order dismissing the two petitions for rules to show cause the trial court found that the TRO had expired 10 days after issuance, that the transfers complained of from the two accounts had occurred more than 10 days after the issuance of the TRO, and that no application to extend the TRO had been made prior to the acts complained of. The court also entered judgment against Dolores for $100 for the wrongful filing of the two petitions. The order further provided that there was no just reason to deny or delay enforcement or appeal of the order.
 

 Dolores contends on appeal that a TRO issued without notice in a dissolution of marriage proceeding is not subject to the 10-day limitation on TROs issued without notice imposed by section 11 — 101 of the Code of Civil Procedure. (Ill. Rev. Stat. 1981, ch. 110, par. 11 — 101.) She maintains that section 501 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1981, ch. 40, par. 501) is the sole statute governing the issuance of TROs in dissolution cases. She argues that the legislature intended that a TRO issued without notice in a dissolution proceeding would be controlled by section 501 and would be in effect until final judgment, unless dissolved upon the motion of the party restrained. Thus, she contends that section 11 — 101 is inapplicable to a TRO issued without notice in a dissolution case.
 

 This court held in Melvin v. Melvin (1968), 94 Ill. App. 2d 403, 236 N.E.2d 913 (abstract of opinion), that the Injunction Act (which included the predecessor of section 11 — 101) applied to divorce cases in the same manner that it applied to other civil cases. Although the Divorce Act did not contain a provision allowing the issuance of a TRO to prohibit a spouse from transferring property during the pendency of the action, and although the Divorce Act has now been superceded by the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1981, ch. 40, par. 101 et seq.), we are not persuaded that the legislature intended to exempt TROs issued without notice in dissolution proceedings from the time limitations of the old Injunction Act, which are not contained in section 11 — 101.
 

 As the Historical and Practice Notes to section 501 of the Illinois Marriage and Dissolution of Marriage Act state, this section “*** is derived from section 304 of the Uniform Marriage and Divorce Act, but its provisions in general reflect prior law as it was codified in the former Divorce Act ***. It also represents a codification of case law on temporary relief arising in other contexts.” (Ill. Ann. Stat., ch. 40, par. 501, Historical and Practice Notes, at 376 (Smith-Hurd 1980).) The notes further comment that “[a] temporary restraining order issued without notice expires within a period not to exceed ten days after issuance unless it is extended by the court. Ill. Rev. Stat. ch. 69, par. 3 — 1. See also section 410 [of the Illinois Marriage and Dissolution of Marriage Act].” (Ill. Ann. Stat., ch. 40, par. 501, Historical and Practice Notes, at 377 (Smith-Hurd 1980).) Thus, as the Historical and Practice Notes reflect, it is apparent that a TRO issued without notice in a dissolution of marriage proceeding is subject to the time limitation provisions of section 11 — 101 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 11 — 101) in the same manner as TROs issued without notice in other types of cases are subject to those provisions. See Melvin v. Melvin (1968), 94 Ill. App. 2d 403, 236 N.E.2d 913 (abstract).
 

 Dolores maintains, however, that section 11 — 101 does not apply here because it is in conflict with section 501. She contends that because section 501 deals specifically with TROs in dissolution cases, that it controls over section 11 — 101, which applies generally to the issuance of TROs.
 

 While it is true that a specific statutory provision controls over a general provision on the same matter (Sierra Club v. Kenney (1981), 88 Ill. 2d 110, 126, 429 N.E.2d 1214; McCann v. Lisle-Woodridge Fire Protection District (1983), 115 Ill. App. 3d 702, 711, 450 N.E.2d 1311), it is likewise true that when two statutes relate to the same subject matter they should be construed harmoniously where possible. (Jackson v. H. Frank Olds, Inc. (1978), 65 Ill. App. 3d 571, 578, 382 N.E.2d 550.) Section 501 provides, in part, that:
 

 “In all proceedings under this Act, temporary relief shall be as follows:
 

 (a) Either party may move for:
 

 * * *
 

 (2) a temporary restraining order or preliminary injunction, accompanied by affidavit showing a factual basis for any of the following relief:
 

 (i) restraining any person from transferring, encumbering, concealing or otherwise disposing of any property except in the usual course of business or for the necessities of life, and, if so restrained, requiring him to notify the moving party and his attorney of any proposed extraordinary expenditures made after the order is issued; * * *
 

 (b) the court may issue a temporary restraining order without requiring notice to the other party only if it finds, on the basis of the moving affidavit or other evidence, that irreparable injury will result to the moving party if no order is issued until the time for responding has elapsed.” (Ill. Rev. Stat. 1981, ch. 40, par. 501.)
 

 Section 11 — 101 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 11 — 101) provides, inter alia, that:
 

 “Every temporary restraining order granted without notice shall be indorsed with the date and hour of issuance; shall be filed forthwith in the clerk’s office and entered of record; shall define the injury and state why it is irreparable and why the order was granted without notice; and shall expire by its terms within such time after entry, not to exceed 10 days, as the court fixes, unless within the time so fixed the order, for good cause shown, is extended for a like period or unless the party against whom the order is directed consents that it may be extended for a longer period.”
 

 The term “temporary restraining order” was written into the Injunction Act by the legislature in a new section 3 — 1 in 1967. (Stocker Hinge Manufacturing Co. v. Darnel Industries, Inc. (1983), 94 Ill. 2d 535, 541, 447 N.E.2d 288.) Prior to that time, the terms “restraining order,” “preliminary injunction,” “temporary injunction,” “interlocutory injunction,” and “interlocutory order” had been used interchangeably. (94 Ill. 2d 535, 541, 447 N.E.2d 288.) Thus, the legislature applied the term “temporary restraining order” to a specific type of relief, the purpose of which is to allow the trial court to preserve the status quo pending a hearing to determine whether it should grant a preliminary injunction. (94 Ill. 2d 535, 541, 447 N.E.2d 288.) Section 3 — 1 of the Injunction Act was the predecessor of section 11 — 101 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 11— 101).
 

 The legislature specifically chose to use the term “temporary restraining order” in section 501 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1981, ch. 40, par. 501). We conclude, therefore, that section 11 — 101 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 11 — 101) and section 501 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1981, ch. 40, par. 501), when they use the term “temporary restraining order,” are describing the same type of relief.
 

 “Statutes which relate to the same thing or to the same subject or object are in pari materia, and should be construed together as though they were one statute, even though enacted at different times.” (Spring Hill Cemetery v. Ryan (1960), 20 Ill. 2d 608, 615, 170 N.E.2d 619; see also Doran v. Department of Labor (1983), 116 Ill. App. 3d 471, 475, 452 N.E.2d 118.) Because they relate to the same type of relief, section 11 — 101 and section 501 are in pari materia.
 

 Where two acts in pari materia are construed together and one of them contains provisions omitted from the other, the omitted provisions will be applied in a proceeding under the act not containing such provisions, where not inconsistent with the purposes of the act. (People ex rel. Killeen v. Kankakee School District No. 11 (1971), 48 Ill. 2d 419, 422-23, 270 N.E.2d 36.) Here, section 11 — 101 contains specific language limiting a TRO without notice to 10 days duration. Section 501 does not contain this specific language. Reading the two statutes in pari materia, the 10-day limit will apply to TROs entered under section 501 unless such an application would be inconsistent with the purposes of the Illinois Marriage and Dissolution of Marriage Act.
 

 The purposes of the Illinois Marriage and Dissolution of Marriage Act are set out in section 102 of that act. (Ill. Rev. Stat. 1981, ch. 40, par. 102.) One of the professed purposes of that act is to “mitigate the potential harm to the spouses and their children caused by the process of legal dissolution of marriage.” (Ill. Rev. Stat. 1981, ch. 40, par. 102(4).) The issuance of a TRO without notice is not favored as it is a drastic remedy, which is only appropriate under the most extreme circumstances. (Geesbreght v. Geesbreght (1978), 63 Ill. App. 3d 37, 42, 379 N.E.2d 738; cf. Board of Education v. Parlor (1981), 85 Ill. 2d 397, 401, 424 N.E.2d 1152.) Because this is a drastic remedy, with potential harm to the party restrained, it is consistent with the purpose of mitigating harm to the spouses to have the statutory safeguard of the 10-day limit apply to a TRO issued without notice under section 501. Thus, the 10-day limit for a TRO issued without notice imposed by section 11 — 101 applies to a TRO issued without notice under section 501, because section 11 — 101 and section 501 are in pari materia and because the 10-day limit is not inconsistent with the purposes of the Illinois Marriage and Dissolution of Marriage Act. See People ex rel. Killeen v. Kankakee School District No. 11 (1971), 48 Ill. 2d 419, 422-23, 270 N.E.2d 36.
 

 Dolores also argues that section 501(c) evinces a legislative intent not to subject a TRO issued without notice under section 501 to the 10-day limitation. Section 501(c) provides that:
 

 “A response hereunder may be filed within 21 days after service of notice of motion or at the time specified in the temporary restraining order.” (Ill. Rev. Stat. 1981, ch. 40, par. 501(c).)
 

 Dolores maintains that if a TRO expires within 10 days then this provision is illogical because there would be nothing to respond to at the end of 21 days. Thus, she concludes that the legislature intended a TRO to be in effect until final judgment unless dissolved on motion of the party restrained. She contends that this motion to dissolve must be made within 21 days unless the court specifies some other time in the TRO.
 

 Dolores’ reliance on the section 501(c) provision that a response may be filed within a 21-day period after service of notice of motion is misplaced. The plain meaning of the words “after service of notice of motion” in section 501(c) requires that “notice of motion” be served in order for this response period to apply. No “notice of motion” is served when a TRO without notice is obtained. The party restrained is served with the TRO, not with notice that a motion for a TRO has been filed. Thus, the language Dolores relies on has no application to TROs issued without notice, and therefore, cannot be construed to demonstrate a legislative intent to make such TROs unlimited in duration.
 

 When a TRO is issued without notice in a dissolution case, the court may specify a time to respond to the TRO in the TRO itself. (See Ill. Rev. Stat. 1981, ch. 40, par. 501(c).) This time would naturally be within 10 days since the TRO would have expired on its own after 10 days unless it had been extended by the court under the requirements of section 11 — 101. We believe this was the intent of the legislature when it provided in section 501(c) that “[a] response hereunder may be filed *** at the time specified in the temporary restraining order.” Had the legislature intended TROs without notice to extend beyond 10 days in contravention of section 11 — 101 and established case law, it could have expressly so provided.
 

 Dolores additionally argues that the fact that the litigants in a dissolution proceeding are husband and wife supports a legislative intent not to apply a time limitation to a TRO issued without notice in a dissolution action. While this fact may be a basis on which the legislature could make such a distinction, nothing in section 501 indicates that the legislature did make such a distinction. Rather, as noted above, section 501 and section 11 — 101 are in pari materia and the limitations of section 11 — 101 apply to TROs issued without notice in dissolution cases.
 

 Dolores further contends in her brief that certain differences in language in section 501 and section 11 — 101 demonstrate that the legislature intended it to be more difficult to obtain a TRO under section 11 — 101 than in dissolution cases under section 501. She maintains that this supports her claim that the 10-day limit does not apply to TROs issued without notice in dissolution cases.
 

 While it is true that the two statutes use somewhat different language to describe the necessary requirements in the affidavit to justify issuance of a TRO without notice, the language is substantially similar. Further, even if these changes in language were intended to alter the standard for granting a TRO without notice, they do not affect the in pari materia reading of section 11 — 101 and section 501 since both statutes cover the same subject. (See Spring Hill Cemetery v. Ryan (1960), 20 Ill. 2d 608, 615, 170 N.E.2d 619.) As noted above, such a reading results in the application of the 10-day limit to TRO issued without notice in a dissolution case. Nothing in section 501 indicates an intention to alter this 10-day requirement.
 

 The trial court dismissed Dolores’ petitions for rules to show cause because the alleged violations of the TRO occurred more than 10 days after its issuance. The trial court found that its order of August 5, 1982, which purported to affirm that the TRO was still in effect, was without force since the TRO had expired prior to August 5, 1982. Since we hold that a TRO issued without notice in a dissolution case is subject to the 10-day limit required by section 11 — 101, we affirm the trial court’s order dismissing the petitions because the TRO had expired prior to the alleged violations.
 

 Dolores also argues in her appellate brief that if this court were to hold that the TRO had not expired at the time of the alleged violations, that we should consider whether the judgment for $100 entered against her for wrongful filing of the petitions for rules to show cause was proper. Dolores concedes in her brief that the judgment would be proper if the TRO had expired. Since we hold that the TRO had expired, we need not further address the propriety of the judgment.
 

 For the foregoing reasons, the order and judgment of the circuit court of Lake County are affirmed.
 

 Affirmed.
 

 NASH and LINDBERG, JJ., concur.