THEODORE BULLARD ET ALS. *vs.* HENRY ALLEN ET ALS.

Cumberland.    Opinion February 21, 1925.

*In R. S., Chap. 82, Sec. 6, Par. XIII., the essential words are:  "For a purpose not authorized by law.".   Under Chapter 319, Public Laws, 1915, and amendments thereto, known as the Bridge Act, the Board therein provided may determine whether the proposed bridge is on a main thoroughfare.*

*While the action of town meetings generally conform to parliamentary procedure, it has never been held that they are governed by the strict rules of Legislative practice.*

*Alleged irregularities in registration of voters cannot be inquired into in proceedings instituted under R. S., Chap. 82, Sec. 6, Par. XIII.*

On appeal.    An action by ten inhabitants of the town of Harpswell brought under the provisions of Par. XIII. of Sec. 6 of Chap. 82, of the R. S., seeking to prevent the expenditure of the funds of the town in the construction of a bridge between Orr's Island and Bailey's Island in said town of Harpswell.   The complainants contended that the Board provided under Chapter 319, Public Laws 1915, known as the Bridge Act, had no authority to determine the question whether the location of a proposed bridge is or is not on a "main thoroughfare."    It was also alleged that the town meeting at which it was voted to raise and expend the money in the construction of a bridge did not conform to parliamentary procedure.   A hearing was had upon the bill, answers, replications and proof and the sitting Justice entered a decree dismissing the bill with costs for defendants, and plaintiffs entered an appeal.   Appeal dismissed; decree below affirmed with costs for defendants, execution to issue therefor.

The case is stated fully in the opinion.

*Emery G. Wilson,* for complainants.

*David E. Moulton and Carroll W. Morrill,* for respondents.

SITTING:  CORNISH, C. J., PHILBROOK, DUNN, MORRILL, WILSON, DEASY, JJ.

DUNN, J.   Concurring in the result.

PHILBROOK, J.   R. S., Chap. 82, Sec. 6, Par. XIII. provides as follows:  "When counties, cities, towns, school districts, village

or other public corporations, for a purpose not authorized by law, vote to pledge their credit, or to raise money by taxation or to exempt property therefrom, or to pay money from their treasury, or if any of their officers or agents attempt to pay out such money for such purpose, the court shall have equity jurisdiction on petition or application of not less than ten taxable inhabitants thereof, briefly setting forth the cause of complaint."

Admittedly the plaintiffs are ten taxable inhabitants of the town of Harpswell. The defendants are the municipal officers and treasurer of the same town.

The complaint, on which the plaintiffs base their petition is as follows:

"THIRD:—The said defendants, claiming to act under and by virtue of the provisions of Chapter 319 of the Private and Special Law of 1915, as amended, caused a meeting of the Board therein provided for (composed of the State Highway Commission, the County Commissioners of Cumberland County, and the Municipal Officers of said town), to be called at Orr's Island in said Town on the first day of August, A. D., 1922, to determine the necessity of building a bridge between Orr's Island and Bailey's Island in said Town, although said defendants well knew said proposed bridge was not located on any main thoroughfare.

"FOURTH:—The said Board,—without giving notice of the time and place,—met at said Orr's Island on the first day of August, A. D., 1922, and thereupon, without a hearing, voted:— (1) That this bridge is on a main thoroughfare; (2) That public convenience and necessity require the construction of this bridge; (3) To approve proposition 3 for a stone bridge with a steel draw span, estimated to cost one hundred and twelve thousand and four hundred ($112,400.00) dollars, subject to the Town authorizing the Municipal Officers to proceed and to secure the necessary funds,—although said Board well knew said proposed bridge was not located on any main thoroughfare.

"FIFTH:—At a special Town Meeting duly called and held at the Town House in said Harpswell on the fifteenth day of September, A. D., 1922, said Town refused by a vote of 261 to 254 to authorize the Municipal Officers to proceed and to secure the necessary funds.

"SIXTH:—Notwithstanding the refusal of the Town to authorize them so to do, the said defendants are proceeding to secure the necessary funds and are preparing to issue notes, bonds, or other obliga-

tions of indebtedness for the payment of money upon the credit of said Town to obtain a large sum of money, to wit:—twenty-two thousand four hundred and eighty ($22,480.00) dollars,—which said sum the said defendants propose to pay into the State Treasury as the proportional share of the estimated cost of the construction of said bridge to be paid by said Town,—all without legal authority so to do.

"SEVENTH:—The said plaintiffs are being injured and are liable to further immediate and irreparable injury and damage to their property from the acts of the said defendants."

This complaint is followed by a prayer for a decree enjoining the defendants from proceeding to secure funds, or to issue notes, bonds or other obligations of indebtedness for the payment of money on the credit of said town, and from paying said money into the State Treasury as the town's proportional share of the estimated cost of the construction of the bridge concerning which this controversy has arisen.

It is quite apparent that the plaintiffs intended to say that the defendants were claiming to act under the provisions of Chapter 319 of the Public Laws of 1915, as amended instead of Chapter 319 of the Private and Special Laws of that year, and we shall proceed to consider the case as if this clerical error were amended.

The case was heard by a single Justice who made extended findings of fact and rulings thereon. Based upon those findings and rulings the decree below was for dismissal of the bill with costs for the defendants. From this decree the plaintiffs appealed.

The essential words in the statute first above quoted are "for a purpose not authorized by law." In order to successfully bring this case within the equity jurisdiction of the court it is necessary to establish the proposition that the defendants, in their official capacity, are seeking to carry out a purpose not authorized by law.

This controversy is one of long standing and in some of its phases is not a stranger to this court. From information gathered in *Allen* v. *Hackett*, 123 Maine, 106, we learn that the town of Harpswell is composed of a section of mainland, nine and one half miles long, known as Harpswell Neck, with numerous islands on either side. With those on the west we are not concerned. On the east are three large islands, Great, Orr's and Bailey's, extending southerly toward the ocean in the order named. Highway bridges already connect

the mainland with Great Island, and the latter with Orr's Island. The proposed bridge is intended to connect Orr's with Bailey's Island. In recent years, by reason of natural scenic beauty, these islands have developed into flourishing Summer resorts. .

As a background to the present controversy it may be properly observed that more than forty years ago, by Chapter 356, Private and Special Laws of 1883, legislative authority was given to lay out, construct and maintain a bridge, with a draw, over and across the tide waters separating Orr's from Bailey's Island. To the town of Harpswell were delegated all the powers relating to said bridge and its construction which are provided by law in case of town ways. By Chapter 91, Private and Special Laws of 1921 the first section of this enabling act was amended by providing that the bridge might be with or without a draw, as might be required by the proper federal authorities. The other portions of the act remained unchanged. On February 15, 1922, the municipal officers of Harpswell by due process of law laid out a way "Beginning at a point on the center line of the main traveled highway or road at the south end of Orr's Island . . . . said way to connect the main traveled way and thoroughfare on Orr's Island with the main traveled way and thoroughfare on Bailey's Island." This way was duly and legally accepted by the town of Harpswell at a meeting of the inhabitants of said town legally called, warned, and held on the sixth day of March, 1922. The language used in describing this way, which way as thus described was adopted by the town, may throw some light upon one of the contentions to which we shall refer hereinafter.

Chapter 319, Public Laws 1915, known as the Bridge Act, provides for state and county aid in the construction of highway bridges. This act was amended by Chapter 304, Public Laws 1917, Chapter 140, Public Laws 1919, Chapters 50 and 143, Public Laws 1921, and Chapter 193, Public Laws 1923. The last amendment, which struck out all of Section 1 of the act and substituted another therefor, was not in effect when the present form of the controversy arose. We are, therefore, governed by that section as it existed prior to 1923, namely in Chapter 140, Public Laws 1919. That section provides that "When public convenience and necessity require the building or rebuilding of any bridge in any town or city or unorganized township, said bridge being located on any main thoroughfare" the cost of construction, in proportions and under circumstances not

material to the present case, should be borne by the town, city or unorganized township, the county and the state.    Section 2 of the Bridge Act, as it appears in Chapter 304, Public Laws, 1917, provides as follows: "When the municipal officers of any town deem that any bridge on any main thoroughfare must be built or rebuilt, and in their judgment the expense of the construction will entitle the municipality to state and county aid, as provided in section one of this act, they shall petition the commissioners of the county or counties in which said bridge is, or may be built or rebuilt, and the State Highway Commission to meet with them for the purpose of examining into and determining whether public convenience and necessity require the building or rebuilding of said bridge.  .  .  .  . The said municipal officers, together with the county commissioners and the state highway commission, shall constitute a board to determine the necessity of building or rebuilding said bridge, also the form of construction.    The decision of said board, or a majority thereof is to be final and conclusive."

Under these provisions of the Bridge Act the municipal officers of Harpswell caused a meeting of the board, therein provided for, to be held at Harpswell on August first, 1922, at which time and place the board voted (1) that this bridge is on a main thoroughfare; (2) that public convenience and necessity require the construction of this bridge; (3) to approve a certain proposition as to the plan of construction, and cost, "subject to the town authorizing the Municipal Officers to proceed and secure the necessary funds."    At the first meeting called for that purpose on September 15, 1922, the town refused to authorize the municipal officers to proceed and to secure the necessary funds.    At a second meeting of the town, held on September 30, 1922, the municipal officers were authorized to proceed and to secure the necessary funds to construct the bridge. Thereupon this suit was instituted.

The plaintiffs attack (1) the proceedings of the joint commission known as the board provided for under the Bridge Act; (2) the proceedings of the town.

THE PROCEEDINGS OF THE JOINT COMMISSION, OR BOARD PROVIDED BY THE BRIDGE ACT.    The plaintiffs claim that the proposed bridge would not be on a "main thoroughfare" which, as they claim, is a pre-requisite to the construction of the same.    They further claim that the board had no authority, by its vote, to declare that "this

bridge is on a main thoroughfare," as shown by the record of the doings of the board. It is true that the ways in this State, under the provisions of R. S., Chap. 25, Sec. 5, are classified into three groups, 1st, State highways, which shall mean a system of connected main highways throughout the State; 2d, State-aid highways, which shall mean such highways not included in the system of State highways as shall be thoroughfares between principal settlements, or between settlements and their market or shipping point and in so far as practicable feeders to the State highways; 3d, third-class highways, which shall mean all other highways not included in the two classes above mentioned. The plaintiffs claim, since the term "main thoroughfare" is not used in the above classification that a main thoroughfare must come within the first two classes, if not in the first class alone, as otherwise any highway, whether open to travel or not, may become a main thoroughfare by vote of the board, or joint commission, and thereby become entitled to State and County aid in the building or rebuilding of a bridge thereon. They claim that the board is not an inferior court with power to pass upon the question whether a way is or is not a main thoroughfare, and hence its vote that the contemplated bridge is on such a way is of no force or determining power. At this point it is proper to note that under the statute above referred to, R. S., Chap. 25, Sec. 5, the State Highway Commission had declared the road on Orr's Island to be a third-class highway but had not classified the road on Bailey's Island. Finally, under the heading we are now considering, the plaintiffs complain because the decision of the board, or joint commission, was not final but on condition that the town should approve the type of bridge proposed and raise money for its construction.

Upon this branch of the plaintiffs' contention it should be conceded that the proposed bridge must be on a main thoroughfare. That proposition is too plain to admit argument. It must also be conceded that the Legislature has required the State Highway Commission to make charts and maps showing the location and mileage of all highways in the State and to classify those highways according to standards ordained by the law-making body. It also appears from the testimony in this case that the road on Orr's Island had been classified as a third-class highway, but that the road on Bailey's Island had not been classified at all. The plaintiffs claim, therefor,

that because the last named road had not been formally classified, then, of necessity, it is a third-class highway and that under no circumstances could it be a main thoroughfare.

But the Legislature has not given to any person or commission the exclusive power to define the expression "Main thoroughfare," nor is the classification of roads by the State Highway Commission declared to be conclusive, and subject to no amendment, regardless of changes in any environment caused by growth in population, or development of localities by reason of natural resources, or tourist attractions. Plainly, some tribunal must decide the question as to whether a way is a main thoroughfare before a State and County aid bridge can be built thereon. The statute requires the board, or joint commission, to determine whether public convenience and necessity require the building or rebuilding of the bridge, and the decision of said board, or a majority thereof, upon any matter within its jurisdiction, shall be final and conclusive, and the record of its findings upon all preliminary matters shall be prima facie evidence of the truth thereof. It is no stretch of reason to say that one of the elements of public convenience and necessity is whether the way, on which such bridge is to be built, is so situated and supports such an amount of travel as to make it a main thoroughfare. With all conditions open to their observation and study, at the time of their conference, who could better decide whether the way is a main thoroughfare than this board or joint commission? To whom, or to what tribunal can they go, because of any statutory provision, for a decision of the question? To us it seems too plain to admit discussion that one of the questions, interlocked with that of public convenience and necessity, which the board or joint commission may and generally must decide is whether the proposed bridge is on a main thoroughfare; that their decision is final and conclusive as to public convenience and necessity, and the record of their findings upon all preliminary matters is prima facie evidence of the truth thereof. If, as the plaintiffs claim, the question of main thoroughfare were to depend alone on the classification of highways once made by the State Highway Commission and subject to no change, then any error of judgment on the part of, or failure to act by that body might entail great hardship and inconvenience to the general travelling public because of the absence of a bridge, the construction of which could not be financed by a town of small taxable resources. It

should also be observed that although the expression "main thoroughfare" does not appear, yet the word "thoroughfare" does appear in the classification of State-aid highways wherein the Legislature was careful to say that this included those ways which are "thoroughfares" between principal settlements or between settlements and their market or shipping point.   To say that a bridge upon a State-aid highway could not be built by State and County aid because the words "main thoroughfare" were not used instead of "thoroughfare" would be to press a technicality too absurd to make successful impression upon the average mind.   Who, better than the board, or. joint commission, could decide whether a way was between principal settlements or between settlements and their market or shipping point?   Nor is there any merit in the claim made by the plaintiffs that the way on Bailey's Island could not be a main thoroughfare because it would end on that island and therefore be a cul-de-sac. This expression is well defined in *Perrin* v. *New York Cent. R. Co.*, 40 Barb., 65, where it is held that a cul-de-sac is a way in a city which is of the nature of a street but which has but one entrance and does not communicate with any street or passageway at any place except the one entrance.   Nothing in the testimony supports the claim that the road on Bailey's Island does not communicate with any street, road or passageway at any place except the one entrance.

The last objection of the plaintiffs to the decision of the joint commission is that it was not final but on condition that the town should approve the type of bridge proposed and raise money for its construction.   An examination of the record shows that this objection is overstated.   Upon this point the testimony shows that the joint commission's conditional vote was only "subject to vote of town authorizing the municipal officers to proceed and to secure the necessary funds."   This provisional vote was strictly in accordance with Public Laws, 1921, Chapter 50, Page 57, lines 25 and 26, and can avail nothing to the plaintiffs.   Authorities relating .to conditional acceptance by a town of a road laid out by its selectmen have no application to the case at bar.

PROCEEDINGS BY THE TOWN.   The plaintiffs say that the selectmen proceeded to call a special town meeting, to be held on September 15, 1922, to vote upon the question of approval of the bridge and to raise money for its construction; that the meeting was duly held and that, at such meeting, the town refused to authorize the municipal

officers to secure the necessary funds for the construction of the bridge; that the so-called bridge adherents, claiming not to be bound by the vote of this meeting, caused a second meeting of the town to be called, to be held on September 30, 1922, to vote upon the identical articles which had been voted upon at the meeting of September 15; that on the day preceding the last meeting the selectmen were in session at their office and registered a large number of persons as voters for the express purpose of allowing such persons to vote at the meeting on the following day; that at the second meeting, without a formal vote to reconsider the vote passed at the former meeting, the town voted to approve the type of bridge proposed and to raise money for its construction; that the second meeting was improperly held and that the vote of the town at that meeting, authorizing the construction of the bridge, was illegal, because it had no authority to reverse the action of the town previously and, as plaintiffs say, finally taken.

In discussing this branch of the contentions by the plaintiffs it is necessary to call attention to the fact that they have again over-stated the facts. Nothing in the record shows that at either meeting of the town was there any article in the warrant which included an approval of the proposed bridge by the town. The warrant provided for an expression of the voters upon the question of authorizing the municipal officers to provide funds for the town's share of the expense of building the bridge and nothing more. This, by the statute, the town was obliged to do before the municipal officers could proceed to raise the necessary funds.

The record quite clearly shows that there was a town meeting on September 15, 1922. Evidently the contest between pro-bridge and anti-bridge adherents was spirited. The moderator of that meeting testified that as he was about to declare the vote it was discovered that there were ten votes appearing on the table, which brought the number of ballots cast far in excess of the number of names checked on the list and he ordered a recount of the list to be sure there was no error in the number of names checked on the list, and that there was general confusion, and before that count was made there was a motion for adjournment duly made and seconded, and the meeting was adjourned without any vote being declared by the moderator. The town clerk's record of the meeting, however, shows that the

result of the ballot, as counted by the checkers, was 254 "yes" votes (in favor of raising the money).and 261 "no" votes (opposed thereto).

Thereupon a second town meeting was called, for September 30th, upon a warrant containing the same articles as those contained in the warrant for the meeting of September 15th, except an article to choose an auditor, which appeared in the earlier meeting and has no bearing upon the present controversy. Before this meeting proceeded to vote upon the question of raising money a voter present rose and said: "Mr. Moderator; I protest against this meeting as it is illegally called and held." This protest was recorded in the minutes of the meeting by order of the moderator.

The plaintiffs do not argue any irregularity in calling the second meeting but do claim (1) that the vote of September 15 was not reconsidered at the meeting of September 30; and (2) that the meeting of September 30 had no authority to reverse the action of the town previously and, as they claim, finally taken. They claim that towns are governed in their meetings by the rules of parliamentary procedure unless they have adopted special rules of procedure. They cite no authorities in support of this claim and indeed the true rule is broader than that claimed by the plaintiffs. The Massachusetts court, in *Wood* v. *Milton*, 197 Mass., 531, speaking through Mr. Justice Rugg, holds that a town meeting is not a representative body but a pure democracy where the citizens, as to matters within their jurisdiction, administer the affairs of the town in person; that the technical rules of parliamentary law, designed for the regulation of deliberative assemblies are, in some respects, ill adapted for the transaction of the affairs of a town meeting; hence, although in general the action of town meetings conforms to parliamentary procedure it has never been held that they are governed by the strict rules of legislative practice. The same court in *Hunneman* v. *Grafton*, 10 Metcalf, 454, holds that the technical rules of a legislative body, framed for its own convenient action and government, are not of binding force on towns unless such rules have been so acted upon and enforced by the town in their regular meetings as to create a law for themselves and binding on the inhabitants. In *Hill* v. *Goodwin*, 56 N. H., 441, it was held; "Nothing can be better settled than that every deliberative assembly, (and undoubtedly a town meeting is theoretically and nominally such, however, it may be in fact) is and must be the final judge of its own parliamentary law.

No doubt the ordinary rules of parliamentary law, as laid down in the manuals and books of authority, are a very convenient aid to the orderly transaction of business; but its rules are in many matters complicated and the distinctions subtle and nice;—and when the various champions of discussion engage in a game of parliamentary tactics, a town meeting would very soon find itself entangled in the complicated meshes of parliamentary rules which would effectually stop all proceedings and bar all legitimate action if they were of any binding force."

The plaintiffs' claim, that the meeting of September 30 had no authority to reverse the action of the town taken on September 15, is of no avail under the circumstances of this case. The rights of third parties or other intervening rights had not been impaired. Our own court, in *Parker* v. *Titcomb*, 82 Maine, 180, following the universal rule in such matters, has held that a town is free to act as it pleases within its legal scope. It may take action in one direction today and in another tomorrow provided it does not impair intervening rights.

As to alleged irregularities in registration of voters on the part of the municipal officers before the second meeting, it only needs to be said that such irregularities, if any existed, cannot be enquired into in this equitable proceeding designed to ascertain whether there was any attempt on the part of the town or its officers or agents to act upon a purpose not authorized by law.

In view of the conclusions which we have reached we do not deem it necessary to discuss the contentions as to whether the plaintiffs have or have not pursued the proper form of action. Assuming, but not deciding that the plaintiffs have proceeded properly, they have failed to sustain the proposition that the town or its officers or agents were attempting to raise money or pledge the credit of the town for a purpose not authorized by law and the mandate must be,

> *Appeal dismissed.*
> *Decree below affirmed with additional costs for defendants and that execution issue therefor.*