ELWIN C. KNAPP ET AL.
*vs.*
SWIFT RIVER VALLEY COMMUNITY
SCHOOL DISTRICT ET AL.

Oxford.    Opinion, February 16, 1957.

*Brann & Isaacson,* for plaintiffs.

*Clifford & Clifford,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, JJ. BELIVEAU, J., did not sit.

WILLIAMSON, C. J. On appeal. This is a bill in equity by ten taxable inhabitants of the Town of Byron and also of the defendant The Swift River Valley Community School District against the District and its trustees to enjoin the defendants from borrowing and expending any funds, from acquiring land, conveying facilities, constructing and equipping a community school building, or entering into any contracts in connection with the proposed operation of the District. The bill is brought under the equity jurisdiction statute, R. S., c. 107, Sec. 4, Subsection XIII. The bill was dismissed without costs by the sitting justice.

The facts are agreed upon and are in substance as follows:

At a town meeting on March 19, 1956, the Town of Byron voted: (1) to join with the Town of Roxbury to form the defendant school district; (2) to authorize the District to acquire and hold property of a value not in excess of $40,000; and (3) to authorize the District to borrow money and issue its bonds and notes in an amount not in excess at any time of $36,000.

On March 5, 1956, like votes were passed at the town meeting of Roxbury. The trustees of the District were subsequently appointed by the municipal officers of each town. On March 21, 1956, the trustees filed their return with the Secretary of State as required by statute. The Secretary of State issued his certificate on March 23rd that the District "has been duly organized as a politic and corporate entity." Under the statute "such certificate shall be conclusive evi-

dence of the lawful organization of the community school district and of the election or appointment of the trustees thereof." It is agreed that "The Swift River Valley Community School District is a legally organized and operating School District, and its Trustees and Officers were legally appointed to their office." See statute relating to the formation of Community School Districts, R. S., c. 41, Secs. 112-121 inclusive.

On March 26 the District borrowed $5,000 from a bank. Prior to the bringing of the bill the District incurred other obligations and made certain payments in connection with the proposed community school.

We come now to the action of the Town of Byron from which the litigation arises. On April 6 at a special town meeting, the Town of Byron voted against the very propositions it had voted for on March 19. That is, Byron voted: (1) against joining with Roxbury to form the defendant school district; (2) against authorizing the District to acquire and hold property not in excess of $40,000 for certain purposes, and (3) against authorizing the District to borrow money and issue its bonds and notes. In brief, the Town of Byron did a complete turnabout on April 6th from its action of March 19th.

The defendants argue that the "10 taxable inhabitants" statute does not apply. With this view we do not agree. From the bill it is apparent that the District and its officers have taken action to pledge their credit for obligations already incurred and will in ordinary course attempt to pay out moneys for the purposes indicated. The equity statute is designed to afford protection against improper expenditures in a case such as this. Subsection XIII reads:

> "When counties, cities, towns, school districts, village or other public corporations, for a purpose not authorized by law, vote to pledge their credit or to raise money by taxation or to exempt prop-

erty therefrom or to pay money from their treasury, or if any of their officers or agents attempt to pay out such money for such purpose, the court shall have equity jurisdiction on petition or application of not less than 10 taxable inhabitants thereof, briefly setting forth the cause of complaint."

See also *Carlisle et al.* v. *Bangor Rec. Center*, 150 Me. 33, 103 A. (2nd) 339 and *Crommett et al.* v. *Portland*, 150 Me. 217, 107 A. (2nd) 841.

The plaintiffs contend that by the action of Byron in voting *against* the proposals on April 6, the District thereby lost its authority to do business. In other words, their position is that the District as an effective operating business was destroyed, or at least suspended by the action of April 6.

We are not inclined to seek subtle differences in the meaning of words. The plain fact is that if the plaintiffs are correct, Byron has destroyed The Swift River Valley Community School District. Roxbury had no part in the Byron vote whether we call it a vote to dissolve the District or to suspend its activities. If the right of the District to do business depends from day to day upon the votes of town meetings first granting, then taking away, and perhaps again granting rights, it is apparent that a District, duly organized, would not be worthy of the name of a quasi-municipal corporation with rights and powers, duties and obligations of its own.

The control over a district to be exercised by a member town is limited by the terms of the statute. Each town selects trustees and members of a school committee, who then serve the district, not the town. Their authority is determined by the statutes relating to community school districts and not by the will of the town.

The district is a creature of legislative action. Its creation and likewise its dissolution are solely within the power of the Legislature. The Legislature has made full, complete, and readily understandable provisions for withdrawal of a town from a community school district. Withdrawal requires not only action by the town, but action by the Legislature as well. R. S., c. 41, Sec. 121, provides, in part, as follows:

> "When the inhabitants of a participating town have indicated their desire to withdraw from a community school district by a 2/3 vote of the legal voters in said town present and voting at a special meeting, called and held in the manner provided by law for the calling and holding of town meetings, such withdrawal may be authorized by special act of the legislature upon such terms as shall be contained in such special act; provided, however, no such withdrawal shall be permitted while such community school district shall have outstanding indebtedness."

Until a town has so withdrawn in compliance with the statute, it remains a part of the district. In *Parker* v. *Titcomb*, 82 Me. 180, 19 A. 162, it was held on a "10 taxable inhabitants" bill that the division of a school district without the recommendation of municipal and school officers required by statute in the alteration of districts would be *ultra vires*. See also *Regional High School Dist. No. 3* v. *Town of Newtown* (Conn.) 59 A. (2nd) 527, 532.

The Town of Byron by its action of April 6 neither destroyed nor suspended The Swift River Valley Community School District. The plaintiffs have failed to show any illegal action or attempted illegal action calling for the interference of the court in equity under subsection XIII.

The entry will be

     *Appeal dismissed.*

     *Decree below affirmed without costs.*