### John T. BUCK et al.

v.

### TOWN OF YARMOUTH.[1]

Supreme Judicial Court of Maine.

June 21, 1979.

Nixon & Corson by David J. Corson (orally), Yarmouth, for plaintiffs.

Bernstein, Shur, Sawyer & Nelson by F. Paul Frinsko (orally), Portland, for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY, NICHOLS and GODFREY, JJ.

McKUSICK, Chief Justice.

The three plaintiffs, residents and voters of the Town of Yarmouth, appeal from the Superior Court's dismissal of their action for a court order directing compliance with a petition submitted to the municipal officers pursuant to 30 M.R.S.A. § 2053 (1964).[2] The petition requested that an article calling for the voters of the town to reconsider their decision to appropriate a substantial sum for the construction of a recreation center be inserted in the next warrant for a town meeting or that a special meeting be called within 60 days to consider rescission of the appropriation. Because we find that the Superior Court correctly ruled that these plaintiffs lack standing to pursue this action, we deny the appeal.

In a general election held on November 7, 1978, the voters of the Town of Yarmouth approved the funding and construction of a recreation center. On November 27, 1978, less than three weeks later, the town clerk

1. The caption of the complaint named the Town of Yarmouth as defendant even though the relief sought would run against the Town Council.

2. 30 M.R.S.A. § 2053 provides in full:
"On the written petition of a number of voters equal to at least 10% of the number of votes cast in the town at the last gubernatorial election, but in no case less than 10, the municipal officers shall either insert a particular article in the next warrant issued or shall within 60 days call a special town meeting for its consideration."

was presented with a petition signed by 372 registered voters,[3] which stated:

"We, the undersigned, being registered voters in the Town of Yarmouth, Maine hereby petition the Municipal Officers of said Town in accordance with Title 30 Maine Revised Statutes Section 2053 for an article in the next warrant issued or for the calling within 60 days of a special Town Meeting to consider whether or not to rescind the appropriation of a sum not exceeding one million four hundred thousand dollars ($1,400,000) for the purpose of designing, constructing and equipping a Yarmouth Community Recreation Center which was voted at the last gubernatorial election as Referendum Question # 1 on November 7, 1978."

By a unanimous vote on December 14, 1978, the Yarmouth town council[4] refused to take the action sought by the petition, concluding that "it is unreasonable to call another town meeting pursuant to the aforementioned petition." On the following day, these plaintiffs, who we assume had signed the petition, filed a complaint in Superior Court requesting a court order directing the town to comply with the "mandatory procedure" of 30 M.R.S.A. § 2053 by placing the article in the next warrant to issue or by calling a special town meeting to consider rescission of the town's approval of the recreation center. Plaintiffs now appeal from the Superior Court order dismissing their complaint.

In holding that plaintiffs lacked standing to maintain this action, the Superior Court noted that plaintiffs had failed to allege "special injury different from that incurred by any other voter," and cited *Von Tiling v. City of Portland*, Me., 268 A.2d 888, 890 (1970), and *Manduca v. Town of Old Orchard Beach*, York County Civil Docket No. 75–148 (Me.Super.Ct.1975) (Wernick, J.), for the proposition that "[a]bsent such an allegation, this action must be dismissed . . ."

Plaintiffs' complaint in the case at bar was properly dismissed.

From the earliest days of Maine's statehood, this court has recognized and applied the general rule at common law that

"A private individual can apply for this remedy [against allegedly illegal action or inaction by public officials] only in those cases, where he has some private or particular interest to be subserved, or some particular right to be pursued or protected . . ., independent of that which he holds in common with the public at large; and it is for the public officers, exclusively to apply, when public rights are to be subserved." *Sanger v. County Comm'rs of Kennebec*, 25 Me. 291, 296 (1845).

*See also Robbins v. Bangor Ry. & Elec. Co.*, 100 Me. 496, 503, 62 A. 136, 139 (1905) (mandamus "does not lie at the suit of an individual . . . [unless] his personal and particular rights have been invaded beyond those that he enjoys as a part of the public, and that are common to everyone"). As this court stated in *Weeks v. Smith*, 81 Me. 538, 544, 18 A. 325, 326 (1889), when "the common right is invaded it is a public grievance, and the remedy must be asked in behalf of the public, and by the proper officer, who is required by law to prosecute in the state's behalf." Thus, by first principles an individual citizen who suffers no particularized injury from a public wrong cannot seek relief from the courts; relief vindicating public rights must be sought by the "proper officer," *i. e.*, the Attorney General of the State of Maine.

By statute and case law, however, exceptions have been carved out of those basic principles limiting the private citizen's right to sue on public wrongs. See the historical review in *Cohen v. Ketchum*, Me., 344 A.2d 387, 390–93 (1975), and *Blodgett v. School Administrative Dist. No. 73*, Me., 289 A.2d 407, 409–13 (1972). First, in 1864 the prede-

---

**3.** It is uncontroverted that the petition was signed by more than the minimum number of voters required by 30 M.R.S.A. § 2053.

**4.** 30 M.R.S.A. § 1901(7) (1964) defines the "municipal officers" to whom section 2053 applies to include "the selectmen or councillors of a town."

cessor of present 14 M.R.S.A. § 6051(12) (1964), the "ten taxpayers statute," gave standing to ten taxable inhabitants to seek relief against a specific type of public wrong, namely, the unauthorized or illegal expenditure of public funds. However, the ten taxpayers statute, now subsection (12), gave such plaintiffs standing only to seek preventive relief, as by a restraining order against the proposed public expenditure, rather than remedial relief for a wrong that has already occurred. P.L. 1864, ch. 239, § 1; *Bayley v. Town of Wells*, 133 Me. 141, 174 A. 459 (1934).

Second, in 1874 the predecessor of present 14 M.R.S.A. § 6051(13) (1964) was enacted giving comprehensive equity jurisdiction to our court of general trial jurisdiction, now the Superior Court. P.L.1874, ch. 175. That "full equity jurisdiction" is to be exercised "according to the usage and practice of courts of equity," in cases "where there is not a plain, adequate and complete remedy at law." *Id.* In a series of cases from *Eaton v. Thayer*, 124 Me. 311, 128 A. 475 (1925), through *Cohen v. Ketchum, supra,* this court has declared that this general equity jurisdiction statute, subsection (13), gives standing to any private individual, regardless of particularized injury, to seek *preventive* relief against a threatened public wrong, without limitation to the required ten taxpayers or to the particular financial acts specified in subsection (12). This standing to vindicate a common right, even though the plaintiff suffers no special injury, flowing as it does from the general equity statute, is subject to the usual restrictions upon obtaining equitable relief. *Tuscan v. Smith*, 130 Me. 36, 153 A. 289 (1931). This court has time and again emphasized that the grant of standing implied in subsection (13) is restricted to an application for preventive or injunctive-type relief and that a citizen does not have "the right to apply for remedial relief after the commission of an illegal act, where the act is one which affects the entire community and

not specifically the individual bringing the bill." *Id.* at 44, 153 A. at 293. *See Heald v. School Administrative Dist. No. 74*, Me., 387 A.2d 1 (1978).

In the case at bar, plaintiffs allege no particularized injury suffered by them as a result of the town council's refusal to insert the submitted article in the next warrant to issue or to call a special town meeting within 60 days. The council's refusal to comply with plaintiffs' request affects all voters of the Town of Yarmouth alike.[5]

Nor can the relief requested by plaintiffs be fairly characterized as "preventive" rather than "remedial." The wrong of which plaintiffs complain—the town council's refusal to comply with 30 M.R.S.A. § 2053—is confined to a single act taken at a single time in the past. There is no indication that the council contemplates any future action on plaintiffs' petition that the court is called upon to prevent.

Accordingly, the facts of the present case place it squarely within the rule that plaintiffs who suffer no particularized injury cannot seek remedial relief for an alleged public wrong. Plaintiffs urge us here to depart from that clear rule on three grounds. They argue (1) that section 2053 directs the Yarmouth town council to perform a purely ministerial act, and that the general standing rule applies only to discretionary actions; (2) that application of the general standing rule would defeat the legislature's primary aim in enacting 30 M.R.S.A. § 2053; and (3) that section 2053 constitutes a statutory grant of standing to the signers of a petition submitted pursuant to that section if the signers are voters and are equal in number "to at least 10% of the number of votes cast in the town at the last gubernatorial election."

We find no merit in these contentions. Even accepting *arguendo* the questionable proposition that the action to be taken by the municipal officers under section 2053 is purely "ministerial," plaintiffs cite no case

---

5. A large part of the disagreement between ourselves and our colleagues who dissent revolves around different applications of the "particularized injury" requirement. We in the majority do not find even a "trifle" of difference between the impact of the town council's action upon these plaintiffs and its impact on any other voters in Yarmouth.

to support the asserted proposition that the application of the general standing rule depends on whether the act the municipal body has failed to perform is ministerial or discretionary. Indeed, in logic no basis exists for such a distinction. As stated in *Bayley v. Town of Wells, supra,* 133 Me. at 145, 174 A. at 461, the rule that "[i]ndividual taxpayers of a municipal corporation have not ordinarily the right to sue for remedial relief, where the wrong, for which they seek redress, is one which affects the entire community and not specifically those bringing the action . . . has its origin in sound public policy, which holds that municipal officers should not be subjected to litigation at the suit of every dissatisfied taxpayer." Interjecting the Attorney General between dissatisfied citizens and the municipality assures that the municipality will not be subjected to a "multiplicity of suits." *Eaton v. Thayer, supra,* 124 Me. at 318, 128 A. at 478. This rationale applies regardless of whether the alleged wrong committed by the municipal officers involves a ministerial or discretionary act.

Nor can we accept plaintiffs' assertion that the court's application of the rules of standing undermines the right granted to voters by section 2053. As has long been recognized, the Attorney General may, in his discretion, institute a court proceeding to remedy an alleged violation of a public right. "The Attorney General, in this State, is a constitutional officer endowed with common law powers. See, Constitution of Maine, Article IX, Section 11. As the chief law officer of the State, he may, in the absence of some express legislative restriction to the contrary, exercise all such power and authority as public interests may, from time to time require, and may institute, conduct, and maintain all such actions and proceedings as he deems necessary for the enforcement of the laws of the State, the preservation of order, and *the protection of public rights.*" (Emphasis in original) *Lund ex rel. Wilbur v. Pratt,* Me., 308 A.2d 554, 558 (1973). The section 2053 right to petition the municipal officers to

place an article in the next warrant or to call a special meeting within 60 days is a right common to all voters and can be enforced by their common representative, the Attorney General. He may initiate the proceeding either on his own motion or at the relation of an interested person.[6] Thus, denial of standing to plaintiffs does not leave the voters of the Town of Yarmouth without a remedy for a public wrong suffered by all voters equally, if any exists.

Finally, we reject plaintiffs' contention that section 2053 confers automatic standing on the signers of the petition if they meet the numerical requirement of that section. Such a conclusion would squarely contradict the long line of Maine cases that have developed and applied the general rule of standing to suits brought pursuant to the so-called "ten taxpayers statute," 14 M.R.S.A. § 6051(12) (1964). *Blodgett v. School Administrative Dist. No. 73, supra ; Bayley v. Town of Wells, supra ; Tuscan v. Smith, supra ; Eaton v. Thayer, supra.* The ten taxpayers statute invests the Superior Court with jurisdiction to grant equitable relief against certain unauthorized actions of a county, city, town, or other public body upon a complaint filed "by not less than 10 taxable inhabitants." Despite the fact that 14 M.R.S.A. § 6051(12) was expressly designed to grant jurisdiction to the Superior Court upon a complaint filed by ten taxable inhabitants, it has never been interpreted to authorize even ten taxpayers to obtain remedial relief without a showing of particularized injury. Furthermore, justification for departing from the usual standing rule is even less strong in the instant case where the express purpose of section 2053 is merely to provide a procedure for obtaining the town's consideration of an article submitted by the requisite number of voters, not to confer jurisdiction upon the Superior Court.

Since the Superior Court's dismissal of plaintiffs' complaint for lack of standing was entirely proper, the entry must be:

Appeal denied. Judgment affirmed.

---

**6.** The Attorney General may conduct the case himself or permit the relators to conduct it in

his name. *See Hamlin v. Higgins,* 102 Me. 510, 526, 67 A. 625, 631 (1907).

NICHOLS, Justice, with whom GODFREY, Justice, joins, dissenting.

I am troubled by the rule announced this day by the majority.

From colonial days our citizens have cherished the right to act in town meeting upon proposed appropriations for municipal purposes. The right on occasion to consider rescinding the action of a prior town meeting is equally important to them.

Here the Legislature had expressly provided that upon the written petition of a number of voters equal to at least 10% of the number cast at the last gubernatorial election the municipal officers shall provide an opportunity to vote on the desired article by inserting it in the next warrant issued or by calling a special town meeting with 60 days for its consideration.[1]

Here more than the requisite number of voters had petitioned the municipal officers of Yarmouth for an opportunity to vote on rescission of a $1,400,000 appropriation for constructing a recreation center, which appropriation had been approved less than three weeks earlier.

Here the municipal officers had expressly refused to take the action sought by the petitioners and required of the municipal officers by statute.

Yet when three of the voters who had signed that petition brought this action to enforce the right legislatively given them, the majority announces the rule that, while the Attorney General may vindicate public rights, these voters themselves are without standing in our courts.

The argument for denial of standing is a weak one. True to the ancient learning that mandamus originated at a time when the king presided in person over the court of King's Bench; that mandamus was a prerogative writ, issued in the king's name; and that the proceeding did not partake of the nature of a suit between parties;[2] the majority insist upon a rule that the Attorney General must always bring the action in the nature of mandamus.

This is a rule which over the years our Court may have honored as often in the breach as in the observance. The majority quotes dictum from *Weeks v. Smith*, 81 Me. 538, 544, 18 A. 325 (1889), to the effect that the remedy must be asked by the proper officer, who is required by law to prosecute in the state's behalf. The quotation is accurate enough but in that case, where the "proper officer" failed to move for the writ, our Court did not dismiss for lack of standing but went on to decide the substantive issue raised by the case.

Likewise, in *Morris v. Goss*, 147 Me. 89, 90, 83 A.2d 556 (1951), where the Attorney General had refused to permit the use of his name on the petition for mandamus, and instead appeared as counsel for the respondent, our Court had no difficulty with lack of standing but decided the case on the merits of the controversy.[3]

Again in *Kelly v. Curtis*, Me., 287 A.2d 426, 430 (1972) our Court paid lip service to the ancient rule by recording "serious doubt" as to the plaintiff's standing. The Court proceeded, however, on the merits of the case to decide that the plaintiff should be denied the relief he was seeking.

The majority bolster their denial of standing to these Plaintiffs by citing a series of cases decided under the "ten taxpayers statute"[4] and emphasizing that under that statute ten or more taxpayers have standing only to seek preventive relief as

1. 30 M.R.S.A. § 2053 (1964).

2. *See Funk v. State*, 166 Ind. 455, 77 N.E. 854, 855 (1906).

3. By 1967 the extraordinary writs had been abolished, and M.R.Civ.P. 80B had become the sole means of judicial review of action by all governmental agencies except those for which the Legislature had expressly made a different provision. The Advisory Committee in its Note of December 31, 1967, observed that the courts were now free to develop procedures "unfettered by the rigid confines of prohibition, certiorari and mandamus." Insofar as today's majority would require the Attorney General to be a party to such a proceeding as this, the majority is engrafting upon Rule 80B a "fetter" which the rule-makers did not place there.

4. 14 M.R.S.A. § 6051(13) (1964).

distinguished from remedial action. The majority do not define their concept of preventive relief. Two observations should be made: These Plaintiffs may be taxpayers but they proceed here as voters. Moreover, they were among that body of voters equal in number to at least 10% of the votes cast at the last gubernatorial election, to whom the Legislature had given the right to petition for action in town meeting on a desired article.[5] Secondly, to describe this proceeding as one seeking remedial relief in the sense that in several cases arising under the "ten taxpayers statute" such a remedy was denied the taxpayers, is at best tenuous.[6] These are not parties seeking money damages or a similar remedy that may inure to their benefit. Neither are these parties seeking to contest the validity of action already taken in a town meeting. Their goal is preventive.[7] They seek to prevent the municipal officers from launching this $1,400,000 project without giving the voters an opportunity to first consider in town meeting an article proposing that the appropriation be rescinded. Their role is an affirmative one. Their goal is to require the municipal officers to observe the clear mandate of the statute.

Further indication of the slender support which can be found for the rule the majority invokes today is that even in circumstances when our Court has said that a petition for mandamus must be brought in the name of the Attorney General, our Court has been ready to concede that "[i]t is immaterial who thereafter prosecutes the case." *Hamlin v. Higgins*, 102 Me. 510, 526, 67 A. 625, 631 (1907). It is time, I submit, for substance to prevail over form.

Especially I am troubled by the fact that today's rule flouts the provision of the Constitution of Maine which proclaims that for an injury done him every person shall have a remedy by due course of law, and that justice shall be administered completely, promptly and without delay. Art. I, § 19. My brothers do not even cite the provision, much less explain how, in the light of so explicit a guarantee, these Plaintiffs can be denied a "remedy by due course of law" for the injury which Yarmouth's municipal officers did them when, in violation of the statute, they refused to act affirmatively on the voters' petition.[8]

5. 30 M.R.S.A. § 2053 (1964).

6. The two cases upon which the majority rely are distinguishable.

   *Tuscan v. Smith*, 130 Me. 36, 44, 153 A. 289 (1931) arose under the "ten taxpayer" provision and sought to void a lease given by the town. Arguably in that sense it was remedial in nature. Nevertheless, our Court took the liberal view that it should examine the validity of this lease and, with minor modification, sustained the decree entered below.

   *Heald v. School Administrative District No. 74*, Me., 387 A.2d 1 (1978) is distinguishable as arising under a statute, 20 M.R.S.A. § 225, which *authorized* school directors to call a meeting for the stated purpose, while the instant case arises under a statute, 30 M.R.S.A. § 2053 (1964), which states that the municipal officers *shall* provide an opportunity for the voters to act on the desired article.

7. The distinction between "remedial" and "preventive" has been used by our Court as a convenient label to distinguish those cases in which by the language of 14 M.R.S.A. § 6051(13) there is a "plain, adequate and complete remedy at law" from those cases in which the remedy is inadequate. Where a plaintiff seeks money damages or its equivalent, the relief is deemed remedial. In *Bayley v. Town of Wells*, 133 Me. 141, 174 A. 459 (1934) the plaintiffs sought an accounting and in *Eaton v. Thayer*, 124 Me. 311, 314, 128 A. 475, 476 (1925) the plaintiffs sought "restitution to the treasury . . . of certain sums of money." Those cases sought remedial relief. Where, on the other hand, plaintiffs seek to simply prevent or enjoin alleged illegal action by government officials, *Cohen v. Ketchum*, Me., 344 A.2d 387 (1975), or where they seek to enjoin the borrowing or expending of funds, *Knapp v. Swift River Valley Community School District*, 152 Me. 350, 129 A.2d 790 (1957) or seek to prevent a contract from being entered into, *Blood v. Beal*, 100 Me. 30, 60 A. 427 (1905), the action has been viewed as preventive.

   On the federal level this important distinction between remedial and preventive is well illustrated in such cases as *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) and *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

8. If it be suggested that a town may be harassed by a small minority, who to thwart the majority will repeatedly petition for town meeting action, it may be observed that there are means to protect the public interest. Historically, mandamus was a prerogative writ which issued in the discretion of the court. *See* An-

The contrast is sharp, indeed, between today's course and the pride our Court has taken heretofore in giving effect to the maxim that "for every wrong there is a remedy." *Dwyer v. State*, 151 Me. 382, 395, 120 A.2d 276, 283 (1956).

The action of the Legislature in granting the voters the right to petition for action on possible rescission is effectively nullified by the rule the majority announces because of the dispatch with which town meeting action is required. It is not that the Department of the Attorney General will fail to do its duty to enforce the law. Rather by the time a busy department has reached this problem and verified the facts, it may already be too late for a town meeting to vote to rescind.

Action taken in a prior town meeting can only be rescinded to the extent that it remains unexecuted. The municipal officers who resist the right of voters to seek action on their proposal to rescind an appropriation may move rapidly to commit the town to the expenditure of the funds.

Once the vote of a town accomplishes its purpose, works out the intended result and has spent its force, it cannot be reconsidered and rescinded. *Parker v. Titcomb*, 82 Me. 180, 182, 19 A. 162 (1889).

A town may lawfully reverse the action it took at an earlier meeting so long as the rights of third parties and other intervening rights are not thereby impaired. *Bullard v. Allen*, 124 Me. 251, 261, 127 A. 722 (1925); *Robert's Rules of Order Revised* 169 (75th Anniversary Edition 1951); 4 E. McQuillin, *Municipal Corporations* 568 (3d ed. 1968).

The town meeting must act speedily, or not at all.[9]

There is still another facet of the majority's rule that must be noted. They suggest that a proceeding in the nature of mandamus can be initiated only at the *discretion* of the Attorney General. They do not suggest the boundaries of that discretion. It is apparent that that officer can pick and choose among the cases of nonfeasance by municipal officers. The Attorney General will be determining the cases in which, in his discretion, the desired article should be acted upon in town meeting. Neither these Plaintiffs nor other voters similarly situated have any guarantee that their statutory right to consideration of a desired article in town meeting will be judicially enforced.

not., 113 A.L.R. 209 (1938). The public interest is a proper consideration to be weighed in the exercise of the court's discretion. *State v. Krebs*, 75 Ohio App. 427, 62 N.E.2d 526, 529 (1945). A remedy in the nature of mandamus would be unavailable to parties who come in with unclean hands. *See United States ex rel. Turner v. Fisher*, 222 U.S. 204, 32 S.Ct. 37, 56 L.Ed. 165 (1911); *Funk v. State, supra.* Thus entirely apart from the deterrent of a possible action for abuse of process, the trial court may invoke these equitable doctrines to limit resort to mandamus and to prevent harassment by an obdurate and litigious minority.

If it be suggested that a town should not be required to vote on possible rescission so soon after the appropriation was voted, or that a mere 10% of the voters is too small a number to insist upon town meeting action, the answer is that the statute permits a petition to act on possible rescission and requires only that minimum number of voters to sign the petitions. If changes are needed in these provisions, it is for the Legislature to make them. It is not for the municipal officers to refuse to comply with the pertinent law.

In these cases no one knows how large a body of voters may want action by a town meeting. So long as the statute provides that 10% of the votes cast in the last gubernatorial election is a sufficient number of signers on the petition, it is unlikely that the number who sign will substantially exceed that minimum, even when a significant majority want to see the article voted upon in town meeting.

9. On the futility of seeking rescission or reconsideration after something has been done pursuant to the original vote which the town meeting cannot undo, see *Mitchell v. Brown*, 18 N.H. 315, 318 (1846) (where a school district had voted to raise $250 to build a new school house and the moderator of that meeting had improperly refused to put a motion for reconsideration, once the selectmen had transmitted an assessment to the collector, there could be no reconsideration); *Jennison v. Oyster River Cooperative School District No. 2*, 99 N.H. 424, 113 A.2d 117, 119 (1955) (where a local school district had been illegally prevented from voting on withdrawal from a cooperative school district, and subsequently the legislature had validated organization of the cooperative district, the local district was bound by the act of validation). *See also Inhabitants of Town of North Berwick v. State Board of Education*, Me., 227 A.2d 462, 472 (1967).

Therefore, I am troubled by the rule the majority announces because the remedy it holds out for these voters is an illusory one.

I believe the time has come when our Court should take a fresh look at the law of standing. We live in a day when the courthouse doors swing open for many parties who in the past would have been denied standing to sue. As Professor Davis has observed:

> The basic idea that comes out in numerous cases is that an identifiable trifle is enough for standing to fight out a question of principle; the trifle is the basis for standing and the principle supplies the motivation. Davis, *Standing— Taxpayers and Others*, 35 U.Chi.L.Rev. 601, 613 (1968) [10]

Any person who is injured in fact by governmental action should have standing to challenge its legality. This was recognized when the plaintiffs in *Baker v. Carr, supra,* sought redress for arbitrary impairment of their voting right. It should be recognized by our Court when the Plaintiffs in the instant case seek redress for arbitrary denial of their right to petition for town meeting action.

I stand with Professor Davis when he declares that the way to protect against too much government by judges is to limit *what* the judges decide, not to limit *who* can raise a question for the judges to decide. The appropriate tools are the law of unreviewability and the law of scope of review, not the law of standing upon which

the majority rest its rule. K. Davis, *Administrative Law of the Seventies* § 22.21 (1976).

The better view, I suggest, was reflected in the opinion of the Court of Civil Appeals of Texas when that court considered a case presenting notable parallels to the case before us. A city charter conferred upon qualified electors the right to petition the city council for a recall election, and a petitioner sought a writ of mandamus to compel the calling of the election. Although his interest in the recall election was no different from that of other private citizens who signed the petition, it was held that he had a justiciable interest in the subject matter of the litigation which permitted him to apply for, and in a proper case obtain, a writ of mandamus without joining the state in the action. *Leggitt v. Nesbitt*, 415 S.W.2d 696 (Tex.Civ.App.1967).[11]

Here the Plaintiffs have a particularized injury in that they were among the signers of petitions asking town meeting action upon their proposal to rescind the $1,400,000 appropriation, and the municipal officers had arbitrarily refused to put such an article before the voters. Even if they proved to be in a minority among the voters, under the provisions of 30 M.R.S.A. § 2053 (1964) they were entitled to have their proposal voted upon. As petition signers they stand apart from the general body of Yarmouth voters. They are within the zone of interests to be protected by the statutory frame-

---

10. In recent years the United States Supreme Court has allowed important issues to be litigated by parties with small stakes indeed in the outcome. *Baker v. Carr*, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962) (a fraction of a vote); *Harper v. Virginia Board of Electors*, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966) (a $1.50 pool tax); *McGowan v. Maryland*, 366 U.S.. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961) (a five dollar fine and costs); *United States v. SCRAP*, 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973) (use of forests, streams and other resources for camping, hiking, fishing and sight-seeing).

Furthermore our Court has accorded standing to persons who "breathe the air" in the environmental area which was the subject of a Site Law proceeding, *Matter of International Paper Company*, Me., 363 A.2d 235, 239 (1976),

and to "users" of a state park for hiking and camping who sought injunctive relief against the restoring of certain areas of timber blowdown, .*Fitzgerald v. Baxter State Park Authority*, Me., 385 A.2d 189, 196 (1978).

11. For additional cases where individual voters were permitted to prosecute proceedings in the nature of mandamus to compel a vote or an election (notwithstanding in some instances mention of the state or the people in the caption) *see Green v. Thornton*, 265 S.C. 436, 219 S.E.2d 827 (1975); *People ex rel. Killeen v. Kankakee School Dist. No. 11*, 48 Ill.2d 419, 270 N.E.2d 36, 39 (1971); *Gibson v. Winterset Community School Dist.*, 258 Iowa 440, 138 N.W.2d 112 (1965); *and State ex rel. Shipman v. Young*, 175 Ohio St. 215, 193 N.E.2d 85, 88 (1963).

work within which the claim arises. *Association of Data Processing Serv. Org. v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1963).

Furthermore, it is only a matter of months since our Court was called upon in a declaratory judgment proceeding to decide whether political interest alone, although shared with a certain segment of the public, could support a challenge to governmental action. Where voters had signed an initiative petition seeking certain amendments to a pending property tax measure, our Court recognized that they had demonstrated the type of particularized interest in that controversy which would accord them standing. *McCaffrey v. Gartley*, Me., 377 A.2d 1367, 1370 (1977).[12] The voters-petitioners who are the Plaintiffs in the instant case have demonstrated, I submit, in like degree a particularized interest in this Yarmouth controversy which assures that the issues will be litigated between parties having substantial, adverse interests. In sum, these Plaintiffs have standing.[13]

The threshold question of standing is the sole issue decided by the majority. I go further and, applying the principles stated by the United States Supreme Court in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), conclude that these Plaintiffs have a cause of action for the nonfeasance of the municipal officers. First, they are of the class for whose especial benefit 30 M.R.S.A. § 2053 (1964) was adopted. It could hardly be argued that this statute was enacted for any other purpose than to insure that a body of voters,

often perhaps a minority, could have the desired article acted upon in town meeting. Second, once the Legislature created such a right, we may infer that the Legislature intended this group of voters to have an effective remedy for an infringement of that right, absent any indication of a contrary intent.[14] *Waddell v. Briggs*, Me., 381 A.2d 1132, 1135 (1978) (a court must look to the end sought in the enactment of a statute and approve a construction which will not nullify its purpose).

Whenever a power or right is conferred by statute, whatever is necessary to carry out that power or to make that right effective and complete will be implied. That which is so implied is as much a part of the statute as that which is expressed. *Clark v. State Employees Appeals Board*, Me., 363 A.2d 735, 737 (1976).

For these reasons I find the rule which the majority announces to be antiquated and unduly constraining. It nullifies the Legislature's purpose in enacting the statute here invoked. It denies these Plaintiffs "a remedy by due course of law" which is guaranteed them by the Constitution of Maine.

I respectfully dissent.

---

12. For another case where our Court has recognized the standing of a citizen to sue to enforce a political right, *see Jones v. Maine State Highway Commission*, Me., 238 A.2d 226, 229 (1968). There a South Portland voter, who could claim no financial damage, alleged the loss of his right to vote on the removal of toll charges on the State's bridge across far-away Jonesport Reach. Our Court declared, "If he has been wrongfully deprived of such right, it is a substantial loss and of recognized justiciability." *Id.* By the reasoning of today's majority, however, it would appear there was not a "trifle" of difference between the impact upon that South Portland voter and upon other voters across the state.

13. To paraphrase an observation made only a few weeks ago, these Plaintiffs not only have the "identifiable trifle" essential to standing, but they have the motivation that assures the adverseness upon which our Court must depend for illumination of difficult questions. *Cohen v. Millett*, Me., 400 A.2d 1080 (1979) (Nichols, J., dissenting).

14. *See* 30 M.R.S.A. § 2051(4) (1964) for another indication that the Legislature intended the petitioners to have some alternative to waiting for the Attorney General to decide whether to enforce their right to town meeting action.