Margaret E. McCORKLE

v.

TOWN OF FALMOUTH, et al.

Supreme Judicial Court of Maine.

Argued June 9, 1987.
Decided Aug. 6, 1987.

Robert L. Cram (orally), Falmouth, Cabanne Howard (orally), Deputy Atty. Gen., amicus curiae, Augusta, for plaintiff.

William L. Plouffe (orally), Drummond, Woodsum, Plimpton & MacMahon, Portland, for defendant.

Before McKUSICK, C.J., and NICHOLS, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

SCOLNIK, Justice.

Margaret E. McCorkle appeals from a judgment of the Superior Court (Cumberland County) dismissing her action against the Town of Falmouth ("Town") and six members of the Falmouth Town Council for lack of standing. Pursuant to Rule 75A(f) of the Maine Rules of Civil Procedure, we granted leave to the Attorney General to file a brief as *amicus curiae* and to participate in oral argument.

### FACTS AND PROCEDURE

On November 4, 1986, the Town held a referendum vote on whether to approve a bond issue for the construction of a municipal swimming pool. According to election results, voters approved the bond issue. Subsequently, the plaintiff and other citizens of the Town successfully petitioned the Town for an inspection of the ballots cast. On November 21, 1986, a hearing was held in which six members of the seven-member Falmouth Town Council supervised a recount of the ballots cast at the referendum election.

At the recount, after all ballots cast on election day were counted under direction of council members, it was determined that votes in favor of the swimming pool bond issue numbered 1951, and votes opposed to the swimming pool bond issue numbered 1956. The council members then voted to examine certain absentee ballots (21 in number), which had been rejected as defective by either the Town Clerk or the wardens at each polling place.[1] They examined the rejected absentee ballot envelopes and, voting on each, decided to reject 14 ballots as did the clerk or wardens, but to accept 7 of the ballots that were previously rejected by these officials.

The council members opened the 7 ballot envelopes to count the votes. Six were in favor of the swimming pool bond issue, and one was blank. The council members then declared the bond issue approved by the voters, the count being 1957 votes in favor and 1956 votes opposed.

---

1. The rejection of defective absentee ballots by the Town Clerks and wardens is provided by

21-A M.R.S.A. §§ 759-760 (Supp.1986).

In her complaint against the defendants, McCorkle alleges, *inter alia*, that she is a resident taxpayer of the Town and that she voted in the November 4, 1986 election. She claims that the Town Council exceeded its statutory authority by (A) examining the absentee ballots previously rejected by the Town Clerk or wardens and (B) substituting its judgment for that of the Town Clerk or wardens as to the validity of the seven previously rejected absentee ballots. She asks the Superior Court to declare that the initial ballot recount taken by the council members is the legally-binding tally of votes, and that, as a result, the citizens of the Town rejected the bond issue by a vote of 1956 to 1951. She also asks the court permanently to enjoin the Town Council from proceeding with the bond issue.

## DISCUSSION

In dismissing McCorkle's action for lack of standing the Superior Court followed the established rule that to have standing in a suit against a municipal government, a single plaintiff must claim "special injury" or seek "preventive relief." *E.g. Buck v. Town of Yarmouth*, 402 A.2d 860, 861–862 (Me.1979); *Cohen v. Ketchum*, 344 A.2d 387, 390–392 (Me.1975). It concluded that the "[p]laintiff can prove no special damage as she is affected by the bond issue in the same way as other Falmouth taxpayers" and that "the essence of her complaint is remedial." On appeal, McCorkle argues that she has standing because she is seek-

ing preventive, not remedial, relief in her action. We agree, and vacate the Superior Court's judgment on that ground.[2]

McCorkle seeks to enjoin the defendants from appropriating funds and issuing bonds without a vote of the electorate authorizing such action. As we said in *Cohen:*

> [T]he named plaintiff has standing to seek to achieve preventive relief against illegal action by a local governmental unit of which plaintiff is a resident taxpayer—especially when, as here, the asserted illegality relates to a subject matter of direct interest to any taxpayer, the incurring of governmental indebtedness.

344 A.2d at 392.[3]

McCorkle clearly qualifies as a party plaintiff in the case before us. By her complaint, McCorkle, a resident taxpayer and voter of the Town, contends that the Town voters, in the referendum election, voted to deny authorization of a bond issue, and that the defendants, by their actions, illegally recounted citizen's votes to arrive at an opposite result. She seeks to prevent the defendants from incurring allegedly illegal municipal indebtedness. The plaintiff "suing as a solitary resident taxpayer suffering no special damage has standing to invoke the full equity jurisdiction conferred upon the Superior Court ... for an award of appropriate preventive relief" against the defendants. *Id.* at 392–393.

The entry is:

---

**2.** Because we have no difficulty concluding here that the relief sought was preventive, we defer to another day acting upon the invitation of appellant and *amicus curiae* to reconsider the viability of the "preventive-remedial doctrine." *See Lehigh v. Pittston Co.*, 456 A.2d 355, 358 n. 11 (Me.1983).

**3.** In *Cohen*, plaintiffs, in a series of cases that were consolidated on appeal alleged, *inter alia*, that a school district was malapportioned and that the elected school board had illegally presented a proposed school bond issue to the voters. We held, *inter alia*, that as a matter of law, any adjudication of the alleged malapportionment issue could not, retroactively, affect the bond issue that was approved by the voters. *Id.* at 395–397. We concluded that "the particular taint introduced when an elected body is malapportioned—that the Board's representa-

tional voting does not reflect equally the voting power of the people—was here purged when the people approved the project by their own direct vote." *Id.* at 395.

The defendants suggest that our decision in *Cohen* not to reach the merits of the malapportionment question was based upon a determination that the taxpayers/plaintiffs lacked standing. Quite the contrary. We concluded that the plaintiffs did have standing to seek an injunction to prohibit the school board from issuing school construction bonds, *id.* at 397, but, according to the statutory power given to our school boards by the legislature and the Supreme Court's decision, *Toombs v. Fortson*, 384 U.S. 210, 86 S.Ct. 1464, 16 L.Ed.2d 482 (1966), *aff'g* 241 F.Supp. 65 (N.D.Ga.1965), interpreting a similar grant of statutory power in Georgia, we could not effectuate such a preventive remedy. *See Cohen v. Ketchum*, 344 A.2d at 396–397.

Judgment vacated. Remanded for further proceedings consistent with the opinion herein.

McKUSICK, C.J., and CLIFFORD, J., concurring.

GLASSMAN, J., with whom NICHOLS, J., joins, concurring.

I concur with the court's holding that McCorkle has standing in the Superior Court to contest the action of the Falmouth Town Council. However, I reach that conclusion on purely statutory grounds and find no occasion to apply the "special injury" and "preventive/remedial" analysis on which the court relies.

At issue here is the propriety of the procedures employed in the recount. 30 M.R.S.A. § 2065 (Supp.1986), that governs referendum ballot inspection and recount procedure, provides as follows:

> Upon written application of 10% or 100, whichever is less, of the persons whose names were checked on the voting list at any municipal referendum or ballot question under section 1915 or 2061, a ballot inspection or a recount hearing shall be granted. The same limits, rules and all other matters applying to candidates shall apply equally to applicants for either the inspection or recount.

By its plain language section 2065 indicates that whatever procedural or substantive rules would govern a candidate's challenge to the propriety of recount procedures in the electoral context apply equally to a voter's challenge to the propriety of recount procedures employed in the referendum context. Accordingly, the standing requirements with which a candidate for office would have to comply to contest procedures employed in a recount apply with equal force to McCorkle. I do not understand the plural word "applicants" to mean that every signatory of the recount application must join in a class action to contest the recount itself.[1]

Turning to those standing requirements, 30 M.R.S.A. § 2252 (Supp.1986) provides that a candidate for *municipal* office who claims to have been elected "may proceed against another who claims title to the office within 15 days after election day by following the procedure outlined in title 21–A, section 746." In turn, 21–A M.R.S.A. § 746 (Supp.1986) provides that a claimant to a disputed *county* office "must bring a complaint in the Superior Court within 15 days after the certificate of election is issued." 21–A M.R.S.A. § 746(1). After the Superior Court renders its decision, "[t]he party against whom the judgment is rendered may appeal to the Supreme Judicial Court within 10 days after entry of the judgment." 21–A M.R.S.A. § 746(2).

Purely as a matter of statutory entitlement McCorkle had standing to contest in the Superior Court the action of the Falmouth Town Council, and also has standing to contest in the Law Court the Superior Court's dismissal of her action.

---

1. Indeed, the separate statutory track established by 21–A M.R.S.A. § 738 (Supp.1986) for contesting *statewide* referendum ballots provides that "[a]ny resident of the State affected by the results of a statewide referendum may request an appeal in the same manner as a candidate...." 21–A M.R.S.A. § 742(2) (Supp. 1986).